## M. S. M. CORPORATION v. THE KNUTSON COMPANY AND ANOTHER.

167 N. W. (2d) 66.

April 11, 1969—No. 41354.

*Carlsen, Greiner & Law* and *Peter F. Greiner,* for appellant.

*Richards, Montgomery, Cobb & Bassford* and *Greer E. Lockhart,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

528

PER CURIAM.

This is an action by a mortgagor to recover from a mortgagee and a contractor proceeds of a mortgage which plaintiff alleges were diverted by the mortgagee to satisfy a collateral debt owed by the contractor. The trial court heard the matter without a jury and ordered judgment in favor of plaintiff for the sum of $9,133.45, plus interest. The only issue is whether the record compels a finding that the mortgagee applied all of the proceeds of the mortgage to the use of the mortgagor in payment of expenses of construction for which the mortgage was given. We hold that it does not and affirm.

John T. Scott and Wayne E. Murphey, who operated the Northwest Costume House, sought new quarters in anticipation of the condemnation of a building in which they were located. Defendant Marvin L. Montgomery was a neighbor of Scott's and the principal shareholder and president of Mar-Mont, Inc., a construction company, which was also in need of more space. To meet their joint needs, Scott, Murphey, and Montgomery formed the M. S. M. Corporation with Montgomery acting as president, Scott as treasurer, and Murphey as vice president. M. S. M. then orally contracted with Mar-Mont to construct a building for $75,000 with the understanding that Mar-Mont was to be paid its expenses but was to receive no profit. By April 1962, construction had progressed sufficiently to permit Northwest Costume House to take possession of the basement. After some difficulty on May 14, 1962, Montgomery secured an agreement from defendant The Knutson Company to finance the project with a $75,000 mortgage. As the cost of construction rose, an additional $25,000 was secured through Knutson from Equity Capital Company. The only written agreement between M. S. M. and Knutson was the following:

"I hereby authorize The Knutson Company to make progressive and final disbursements to Mar-Mont, Inc. for the property legally described as: Lot 9, Block 6, Rosedale Acres, upon presentation of the lien waivers showing satisfactory compliance.

"/s/ M. L. Montgomery (Pres.)
"/s/ J. T. Scott, Treas.

(Date)"

It is undisputed that on July 27, 1962, The Knutson Company withheld for its account the sum of $7,403.50, and on September 11, 1962, diverted $1,843.66 from the mortgage proceeds to satisfy collateral obligations owed to it by Mar-Mont Company arising out of wholly unrelated transactions. This litigation stems from the claim of M. S. M. that the re-

tention of these sums by Knutson was a breach of fiduciary relationship and compels reimbursement. It is Knutson's contention, on the other hand, that before the project was completed Mar-Mont had spent some $114,000 in construction and was entitled to payment from M. S. M. of amounts equal to or exceeding what Knutson withheld to satisfy Mar-Mont's collateral obligations to it. Hence, Knutson argues that M. S. M. was not prejudiced by the diversion of these amounts.

By the time construction was completed, Mar-Mont was insolvent. Knutson has been unable to produce records to verify its claim that Mar-Mont was entitled to the sums which Knutson withheld. In the accounting contained in Knutson's brief, one item for $7,000 is duplicated by an item for $5,000 which represented the actual amount paid in settlement of the $7,000 item.[1] In addition, an item of $2,924 was represented by a lien waiver, the consideration for which was recited to be $1. No satisfactory proof to support the larger amount was presented to the trial court. M. S. M. in its brief sets forth items paid on behalf of Mar-Mont in the sum of $22,812.77 for which lien waivers were provided in the sum of only $11,744.

When a mortgagee undertakes to disburse funds for a mortgagor under a construction contract, a fiduciary relationship arises.[2] Under such circumstances, the mortgagee has the duty not only to apply all of the proceeds to the use of the mortgagor without diverting them for unrelated obligations incurred by contractors or subcontractors, but also to account for all of the sums expended on behalf of the mortgagor and to furnish adequate proof of the amount paid and the purpose of the disbursement. It is not enough to present opinion testimony that the worth of the building exceeds the amount of the mortgage. In essence, this is the thrust of Knutson's defense.

Where, as here, the mortgagee concedes that proceeds have been diverted, we hold that the mortgagee has the burden of proving by a fair preponderance of the evidence that the mortgagor ultimately received the benefit of all the proceeds of the mortgage.[3] On this record, the trial court was fully justified in holding that Knutson failed to sustain this burden. Accordingly, the judgment is affirmed.

Affirmed.

---

[1] It is undisputed that Mar-Mont received a lien waiver from Don Kral for cement work by giving Kral a check for $7,000 on which Montgomery subsequently stopped payment. The Kral claim was then settled for the sum of $5,000.

[2] Falls Lbr. Co. v. Heman, 114 Ohio App. 262, 266, 181 N. E. (2d) 713, 716.

[3] Equitable Loan Assn. v. Hewitt, 67 Ore. 280, 284, 135 P. 864, 865.