STATE of Wisconsin, Plaintiff-Respondent,

v.

Leon GLADNEY, Defendant-Appellant.

Court of Appeals

*No. 83–2316–CR. Submitted on briefs July 10, 1984.— Decided August 22, 1984.*

(Also reported in 355 N.W.2d 547.)

For the defendant-appellant the cause was submitted on the briefs of *Perry, First, Reiher, Lerner & Quindel, S.C.,* with *Robert J. Lerner* of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Thomas J. Balistreri,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Moser, J. and Michael T. Sullivan, Reserve Judge.

MOSER, J.   Leon Gladney (Leon) was found guilty of first-degree murder for the fatal shooting of a Milwaukee policeman in 1977. In a subsequent trial, he pleaded not guilty by reason of mental disease, and he was found to be mentally ill at the time of the offense. In 1980, Leon was committed to the custody of the Wisconsin Department of Health and Social Services.

Leon filed a petition for reexamination of his mental condition pursuant to sec. 971.17(2), Stats., and a jury

found that he should be recommitted. He asserts three arguments on appeal of the recommitment order: that there was insufficient evidence to support the jury's verdict; that the trial court erred in rejecting certain evidence on a specific conditional release program available to him; and that the trial court used the wrong standard of proof in the recommitment proceeding. We affirm.

Leon first contests the sufficiency of the evidence. Section 971.17(2), Stats., provides for the conditional release of a defendant if the court is satisfied that he "may be safely discharged or released without danger to himself or herself or to others."[1] In addition, sec. 51.20 (1)(am), Stats., says the dangerousness requirement may be satisfied by a showing "there there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."[2]

In the recommitment hearing, the jury heard the testimony of Dr. Edward Schubert of the Winnebago Mental Health Institute, Nola Gladney (Nola) and Milwaukee police officer Richard Menzel.

---

[1] Sec. 971.17(2), Stats., states:

A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department. If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.

[2] Sec. 51.20(1)(am), Stats., applies "[i]f the individual has been the subject of inpatient treatment for mental illness, . . . as a result of a voluntary admission or a commitment . . . under . . . 971.17 . . . immediately prior to commencement of the proceedings, . . . ."

Dr. Schubert testified that in the past Leon had delusions of grandiosity, including a belief that he had helped develop an American Motors car, but he had not suffered delusions in recent months. Dr. Schubert's opinion was that Leon's mental disorder was in remission, but Leon still could be described as a paranoid schizophrenic. The remission was, in all probability, due to the medication Leon was receiving. If Leon stopped taking the medication it would take several weeks for the symptoms to resurface. Leon lived in a minimum-security unit at Winnebago where he was monitored on a daily basis, and where the staff allowed patients to take their medication when they wanted to, although some testing was done to determine if patients were taking their medicine.

Dr. Schubert also testified that Leon needed assistance to maintain himself on his medication. Finally, he said that he did not know if Leon would be dangerous to himself or others if he stopped taking the medication.

Nola testified that she had been married to Leon for twenty-five years but she was currently seeking a divorce. Leon had been hospitalized about fifteen or sixteen times between 1961 and 1977, after which he always returned to their home. Leon stabbed her in 1964 and she was hospitalized with the resulting injuries. Other violent incidents occasionally occurred between them, Nola testified. Around the time of the shooting, Leon quit his job of seventeen years and also stopped taking his medicine. On November 25, 1977, the couple argued about their son's use of the family car without insurance and Leon grabbed a shotgun from a closet during the argument. Nola ran upstairs to call the police. When they arrived Leon opened the door and fired the gun, killing police officer Thomas Kiefer. Nola testified that she had visited Leon recently and his condition was improving. Officer Menzel testified mainly as to the

events leading up to and following the November 25, 1977 shooting.

The evidence must be viewed in the light most favorable to the verdict, and if there is any credible evidence on which the jury could have based its decision we must affirm, particularly where the verdict has the trial court's approval.[3] The jury heard the witnesses' testimony and evaluated their credibility. The testimony most favorable to the verdict was sufficient for the jury to conclude that Leon could not be released without danger to himself or others. There was credible evidence for the jury to find Leon dangerous to himself or others within the meaning of sec. 51.20(1)(am), Stats; thus, we affirm.

Leon also argues that the trial court erred in rejecting evidence concerning a specific conditional release program. The parties stipulated before trial that Leon would not request an outright release; rather, the choice for the jury was whether to recommit Leon or release him on conditions. If the jury decided to release him on conditions, the trial court then would decide on what specific conditions Leon would be released.[4]

Leon was allowed to establish through a psychiatrist that residential treatment programs exist, that patients are adequately supervised in such programs and, in the psychiatrist's opinion, that Leon could be released safely into such a program. Leon then attempted to adduce testimony concerning a specific course of treatment available at a Milwaukee residential treatment center. Details of this specific program were not allowed into evidence because the trial court determined they were irrelevant.

[3] *Roach v. Keane*, 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976).

[4] *See supra* note 1.

The sole question for the jury was whether Leon should be recommitted or safely released on such conditions as the trial court deemed necessary. The record indicates that Leon was allowed substantial leeway in showing how residential treatment centers operate, how such centers monitor patients and how, in an expert's opinion, Leon would function in such a treatment center. From this evidence the jury made an informed decision on whether Leon could be safely discharged. The evidence concerning a specific treatment center was properly excluded because it was the trial court's function to decide on the specific conditions of release.[5]

Leon's final contention is that the beyond a reasonable doubt standard of proof should have been applied in the recommitment proceeding. The trial court placed the burden of proof on the state to show "to a reasonable certainty by evidence which is clear, satisfactory, and convincing that Mr. Gladney is dangerous or would be dangerous to himself and others . . . ."

Currently, the standard of proof in recommitment proceedings is not clearly established by statute.[6] The old standard, in force when our supreme court decided *State v. Gebarski*,[7] called for "proof beyond a reasonable doubt," but that section of the statute has since been repealed.[8] No express dictate on the standard of proof required has replaced the former statute. The Wisconsin

---

[5] *State ex rel. Gebarski v. Circuit Court,* 80 Wis. 2d 489, 502, 259 N.W.2d 531, 537 (1977).

[6] *See* Wis J I—Criminal 661 comments 3 and 4 (1980).

[7] 90 Wis. 2d 754, 280 N.W.2d 672 (1979).

[8] The former "beyond a reasonable doubt" standard of sec. 51.20(14) (e), Stats. (1975), was repealed by sec. 53, ch. 428, Laws of 1977. We note that the supreme court did not expressly consider the standard of proof in *Gebarski,* instead the issue was whether current mental illness had to be found as well as dangerousness.

Jury Instructions Committee recommended in 1982 that the standard of proof in reexamination proceedings should be the same as in the initial commitment proceeding.[9] We agree with this logical assumption and conclude that the trial court properly applied the clear and convincing standard of proof.

Finally, the state argues for the first time on appeal that the burden of proof should have been placed on Leon to prove that he could be safely discharged. Through statutory interpretation the state contends that the burden of proof in recommitment proceedings is the same as in involuntary civil commitments. Section 51.20 (13) (e), Stats., provides: "The petitioner has the burden of proving all required facts by clear and convincing evidence." Because Leon obviously was the petitioner in the recommitment proceeding, the state concludes that the legislature intended for the burden of proof to fall on him.

A reviewing court may, but need not, consider issues raised for the first time on appeal.[10] The state waited until the appeal stage to argue that Leon had the burden of proof, therefore, the issue is waived.

We do note that the state presents a somewhat convincing argument in light of the fact that other procedures used in civil involuntary commitments, including the right to a jury trial, have been applied to criminal recommitment proceedings.[11] In fact, sec. 971.17 (2), Stats., expressly authorizes the use of the civil involuntary commitment procedures of sec. 51.20 (16), Stats., in

[9] *See* Wis J I—Criminal 601–62 introductory comment at 8 (1982).

[10] *Allen v. Allen,* 78 Wis. 2d 263, 270–71, 254 N.W.2d 244, 248 (1977).

[11] *Gebarski,* supra note 5, at 502, 259 N.W.2d at 537.

criminal recommitments. Section 51.20 (16) (g), in turn, says that "[s]ubsections (10) to (13) shall govern the procedure to be used in the conduct of the hearing, insofar as applicable."

The instant case, however, is not one in which the civil procedures are applicable. It would be inconsistent to apply the civil commitment burden of proof, which is on the petitioner, to criminal recommitment proceedings. Obviously, the object of a civil involuntary commitment is to commit a mentally ill person. The petitioner in such a case must be one other than the person alleged to be mentally ill, otherwise the proceeding would be purely voluntary. In fact, sec. 51.20, Stats., refers throughout to the "subject individual" and the "patient" as being separate and apart from the "petitioner." In addition, if the burden of proof were placed on the petitioner in recommitment proceedings, as the state urges, the petitioner would be required to prove a negative—that he or she is not dangerous. Such a process would be inconsistent with the dictates of secs. 51.20 and 971.17, Stats.

*By the Court.*—Order affirmed.