FIRST NATIONAL BANK, Plaintiff-Appellant,†

v.

Manfred WERNHART and Beth Wernhart, Defendants-Respondents,

LAMPERT YARDS, INC., Defendant,

Richard INGRAM d/b/a/ Ingram Construction, Third-Party Defendant.

Court of Appeals

*No. 96–0176. Submitted on briefs August 6, 1996.—Decided September 4, 1996.*

(Also reported in 555 N.W.2d 819.)

†Petition to review denied.

361

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *Alexander E. Brown* and *O'Brien, Anderson, Burgy & Garbowicz* of Eagle River.

On behalf of defendants-respondents, the cause was submitted on the brief of *William J. Joost* and *Nielsen & Nielsen* of Eagle River.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. First National Bank, the mortgagee, appeals a judgment on a counterclaim in favor of Manfred and Beth Wernhart, mortgagors, for negligent distribution of construction loan funds to a residential contractor. The trial court first granted the bank a money judgment against the Wernharts based upon a foreclosure action but granted the Wernharts a partial offset based upon their counterclaim. The court concluded the bank breached its duty for payments made to the building contractor when it failed to inspect the project to determine the work was actually done and by failing to obtain lien waivers from subcontractors. The court found the bank 70% causally negligent and the Wernharts 30% causally negligent,

and reduced the Wernharts' damages accordingly. The bank claims the court erred by imposing a duty of care relating to the disbursement of the Wernharts' loan proceeds and their other funds in the bank's possession, and by failing to precisely state the standard of care applied. We conclude that a mortgage lender who consents to disburse the loan proceeds and personal funds of the borrower, without further participation by the borrower, is an agent of the borrower and therefore owes a duty of due care to assure the funds are paid for work actually done and to assure that the contractor has obtained lien waivers from subcontractors. Because there was no attempt to perform these duties, we reject the bank's arguments and affirm.[1]

The Wernharts selected Richard Ingram as their general contractor to build their single family dwelling in Vilas County. They negotiated a construction contract for a price of $110,000, specifying payments "as construction moves along, balance on completion." The Wernharts contacted the bank and arranged a mortgage loan. The Wernharts also deposited an additional $15,000 with the bank to supplement the loan proceeds used to pay for construction. In response to the Wernharts' statement that a different bank made payouts through a title company, the bank informed them that it made those payments directly to the builder. The discussions and the parties' loan agreement were silent as to inspection to determine progress of construction. Payouts, however, were to be made in accord with the contract between the Wernharts and the builder.

---

[1] We do not address the circumstance where the payout is made to both the borrower and the contractor.

At trial, the bank offered testimony that it was the bank's standard procedure to contact its construction loan borrowers when draws were made, but that Beth Wernhart had expressly told the bank that it would not be necessary to contact them prior to paying the builder. Beth testified that she recalled no such discussion.

As construction progressed, the bank disbursed the Wernharts' loan funds whenever Ingram presented invoices. The bank made a first payment of $15,000 in July of 1992 and a second payment of the same amount in August of 1992. In September, Ingram submitted an invoice for $25,000, which the bank paid. Thus, as of this last payment, the bank had paid out a total of $55,000, of which $40,000 consisted of mortgage funds and $15,000 consisted of the Wernharts' funds deposited with the bank.

Shortly after receiving notice of this last payment to Ingram, the Wernharts contacted the bank and instructed it not to make any additional payments without their permission. The Wernharts were concerned that Ingram had not performed sufficient work on the project to justify the amount of money he had been paid. The bank to this point did not undertake any inspections of the work site. The bank's first inspection occurred in October of 1992 in response to the Wernharts' concerns. One of the suppliers filed a lien when it was not paid, and the Wernharts paid the claim from their own funds.

Concerns about the quality of Ingram's work caused the Wernharts to dismiss him as general contractor and to hire a third party to complete the construction. The Wernharts eventually filed a lawsuit against Ingram to attempt to recover monies paid to him for uncompleted work and for poor quality

construction. However, Ingram filed for bankruptcy, and the Wernharts recovered only $3,500 from the bankruptcy court.

In May of 1993 the bank initiated this foreclosure action against the Wernharts. The Wernharts counterclaimed for negligent distribution of loan proceeds. At a bench trial, the bank presented testimony from its expert that there was no standard construction loan disbursement procedure recognized by Wisconsin lending institutions. He was of the opinion that lending institutions were not required to ensure the work claimed by contractors had in fact been performed. The Wernharts' two experts indicated their own standard practice was to inspect the work site before making disbursements.

The trial court granted the bank a money judgment on its foreclosure action but found for the Wernharts on their counterclaim. The trial court ordered the amount recovered by the Wernharts offset against the amount owed the bank as the result of the foreclosure. The court concluded that the bank owed a duty to the Wernharts to inspect prior to payout and that it breached that duty. The bank now appeals the judgment on the counterclaim, arguing that it owed no duty to the Wernharts and that it did not breach its duty in any event.

■

The bank concedes that the Wernharts' counterclaim is grounded in negligence. To sustain a cause of action for negligence, the complaining party must prove a duty of care on the part of the other, a breach of that duty, a causal connection between the conduct and the injury and actual loss or damage as a result of the injury. *Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 463, 475, 529 N.W.2d 594, 599

(1995). The bank challenges the trial court's conclusion that it owed the Wernharts a duty and its conclusion that it breached that duty. We begin our discussion with the question whether the bank owed the Wernharts a duty.

■■■

Whether a duty exists in a particular case is a question of law the appellate court decides de novo. *State Bank v. Arndt*, 129 Wis. 2d 411, 416, 385 N.W.2d 219, 222 (Ct. App. 1986). A defendant's duty is established

> when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones.

*Westphal v. E.I. du Pont de Nemours & Co.*, 192 Wis. 2d 347, 364-65, 531 N.W.2d 386, 391-92 (Ct. App. 1995) (quoting *A.E. Inv. Corp. v. Link Bldrs., Inc.*, 62 Wis. 2d 479, 483-84, 214 N.W.2d 764, 766 (1974)). In order to prove negligence, a party complainant must first prove that the defendant owes him a duty. *Swatek v. County of Dane*, 192 Wis. 2d 47, 57, 531 N.W.2d 45, 49 (1995). Where the facts that lead to the alleged duty are in dispute, it is the function of the fact finder to resolve the factual disputes. *Schicker v. Leick*, 40 Wis. 2d 295, 300 n.1, 162 N.W.2d 66, 69 n.1 (1968). In actions tried to the court without a jury, findings of fact shall not be set aside unless they are clearly erroneous. Section 805.17(2), STATS. When reviewing a case where the trial court acted as fact finder, this court must accept the reasonable inferences drawn by the trial court and may

not redraw the inferences on appeal. *In re Estate of Koenigsmark*, 119 Wis. 2d 394, 399 n.1, 351 N.W.2d 169, 172 n.1 (Ct. App. 1984).

Although the parties discuss at some length the significance of the testimony regarding the custom in the banking industry regarding inspection before payout, as noted hereafter, the trial court failed to make factual findings regarding conflicting inferences from that testimony, and we do not consider the matter of industry custom dispositive of the question of duty.[2]

■■

The bank's expert opined that there was no custom in this state to inspect the construction site before payout. Two experts on behalf of the Wernharts advised the court that they customarily inspected before payout. The trial court indicated that it was unsure whether a custom of inspection existed in

---

[2] The parties also presented testimony concerning whether the Wernharts waived any right to notice before payments by the bank were made. The bank does not suggest that this alleged waiver negated the bank's duty to inspect or the duty to assure the general contractor had obtained lien waivers. In any case, based upon the trial testimony, the trial court implicitly found that the Wernharts did not waive the bank's customary notice.

The bank indicated that it normally obtained approval from a borrower before payout, but that Beth orally expressly waived the practice. Beth, on the other hand, had no recollection of such a conversation. The testimony therefore presented conflicting factual inferences. The bank may have obtained an oral waiver, and Beth was mistaken. On the other hand, her inability to recall may imply that the alleged conversation never occurred, and that the bank's witness was mistaken. The trial court found Beth to be a "very very" good witness. We conclude that the trial court implicitly found that Beth did not waive the customary notice.

Wisconsin. The court was not bound by the opinion of the bank's expert. The trier of fact is not required to accept opinion testimony, including expert testimony. *See Pautz v. State*, 64 Wis. 2d 469, 476, 219 N.W.2d 327, 330-31 (1974). On the other hand, while the court may have drawn an inference that the practice of inspection by other lenders demonstrates the practice in fact does exist, it did not so find. Because the court made no finding, we cannot accept as a fact that the Wernharts established that the lenders in the area adopted a custom of inspection.

Apart from whether a custom in the industry creates a duty, other jurisdictions have imposed a duty upon a mortgagee who undertakes to disburse funds for a construction mortgagor under an agency theory. *See M. S. M. Corp. v. Knutson Co.*, 167 N.W.2d 66 (Minn. 1969). *Knutson* holds that when a mortgagee undertakes to disburse loan funds for a mortgagor under a construction contract, a fiduciary relationship between the parties arises. The court found such a relationship even in the absence of an express statement by the mortgagee that it alone would control the disbursement of funds.

We note that there is a split of authority among other jurisdictions on this issue, as well as upon the particular theory upon which a duty is imposed. *See cases gathered by* Douglas C. Franck, *Construction Lending: The Mortgagee's Right to Inspect the Construction Project and Duty to Ensure Proper Disbursement of Construction Loan Proceeds*, 81 KY. L.J. 511 (1992-93).[3] Courts have also adopted a similar standard of reasonable care where the issue is whether

---

[3] As the writer notes, liability is alternatively imposed upon theories of agency, trust, implied contract or other considerations.

the lender assured that lien waivers were available so that the homeowner need not pay twice for the same work. *Kalbes v. California Fed. S&L Ass'n*, 497 So. 2d 1256 (Fla. Dist. Ct. App. 1986).

An agency relationship results from the manifestation of control by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. RESTATEMENT (SECOND) OF THE LAW OF AGENCY § 1 at 7 (1958). Here, in addition to the parties' agreement to allow the bank to pay out the mortgage proceeds, the bank also consented to act on their behalf in the disbursement of the Wernharts' personal funds to the contractor. We think these facts mean that the bank assumed the role of the Wernharts' agent, and assumed the accompanying duties as well. All agents owe their principal a fiduciary duty with respect to matters within the scope of their agency. *Bank of California v. Hoffmann*, 255 Wis. 165, 171, 38 N.W.2d 506, 509 (1949). The scope of the fiduciary duty here was to disburse funds in the bank's possession in a reasonable fashion. That duty mandated that the bank inspect the property or take other reasonable measures to assure compliance with the construction contract before disbursing funds.

We summarily reject the bank's argument that, even if a duty exists, it did not breach that duty. The evidence is undisputed that the bank did not undertake any inspections of the property until after it disbursed $40,000 in mortgage proceeds and $15,000 of the Wernharts' personal funds to Ingram. The bank took no other precautions when distributing the funds to assure reasonable compliance with the construction

contract. These facts mandate the conclusion that the bank breached the fiduciary duty it owed the Wernharts.[4]

We also need not linger upon the bank's contention that the trial court failed to specify the bank's duty with precision. In light of the absence of any inspection or inquiry concerning liens, it is sufficient to say that the duty is to use reasonable care, a standard the bank breached beyond question.[5]

*By the Court.*—Judgment affirmed.

---

[4] The bank does not take issue with the remaining two elements of a claim of negligence, causation and damages.

[5] Because we conclude that a tort claim was established, we do not address the question whether there was a breach of contract. The bank agreed with the Wernharts to pay the builder according to the terms of the contract with the builder. That contract in turn provided that the payments were due the contractor "as construction moves along, balance on completion." Our supreme court has held that a breach of contract is not a tort, but that a contract may "create the state of things which furnishes the occasion of a tort." *Colton v. Foulkes*, 259 Wis. 142, 146, 47 N.W.2d 901, 903 (1951). Because we conclude a tort arises here, we need not determine whether the bank's agreement to abide by the building contract was breached under the circumstances.