STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas WENK, Defendant-Appellant.†

Court of Appeals

*No. 00–3334–CR. Submitted on briefs August 7, 2001.—Decided October 2, 2001.*

**2001 WI App 268**

(Also reported in 637 N.W.2d 417.)

† Petition to review denied 1-29-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael K. Gould*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Eileen W. Pray*, assistant attorney general, of Madison.

Before Fine, Curley and Hoover, JJ.

¶ 1. CURLEY, J. Thomas Wenk appeals the trial court's denial of his petition seeking a conditional release from his 1979 commitment entered after the trial court found him not guilty by reason of mental disease or defect of four felonies and found him dangerous to others, pursuant to Wis. Stat. § 971.17 (1977). Wenk argues that the trial court erroneously exercised its discretion when it determined that the State had proved by clear and convincing evidence that Wenk remained dangerous. We affirm. The trial court found that, although Wenk remained drug free while confined, Wenk's significant substance abuse problem, which triggered his previous bouts of mental illness and his criminal conduct, coupled with his drug relapse when previously released, made him dangerous. We are satisfied that this conclusion was a proper exercise of discretion despite the State's professed opinion that it may have failed to meet its burden of proof.

## I. Background.

¶ 2. In October 1977, Wenk was charged with one count of attempt to entice a child for immoral purposes. He entered a plea of not guilty and not guilty by reason of mental disease or defect. While awaiting trial and out on bail, Wenk was charged with three additional felonies involving an eleven-year-old boy; one count of abduction; and two counts of first-degree sexual assault. Ultimately, Wenk withdrew his pleas of not guilty,

716

but he maintained his pleas of not guilty by reason of a mental disease or disorder.[1] On June 28, 1978, the trial court agreed with Wenk and found him to be not guilty as a result of his mental defect or disease. The trial court also found him dangerous and committed him to the Winnebago Mental Health Institute.

¶ 3. Wenk successfully petitioned for conditional release in 1979. However, before all the conditions permitting his release were met, Wenk was recommitted due to his failure to cooperate with officials. Wenk appealed the trial court's decision to recommit him, and this court agreed with Wenk that the recommitment proceeding was improper because Wenk was not afforded a hearing. Wenk, however, continued to be confined until April, 1985, when Wenk again petitioned the trial court and succeeded in obtaining his conditional release. Then, five years later, in 1990, Wenk waived his right to contest the motion seeking revocation of his conditional release after his probation agent instituted proceedings against him when it was discovered that Wenk had failed to remain drug-free and to abstain from contacting his ex-wife.

¶ 4. In April 2000, Wenk, then age 76, again petitioned the trial court seeking conditional release. As a result of his request, the trial court appointed two experts, Dr. George Palermo, a psychiatrist, and Dr. Kenneth Smail, a psychologist, to examine Wenk. At the hearing, the State called only one of the two experts as a witness, Dr. Kenneth Smail. Dr. Smail testified that, in his professional opinion, Wenk could be released if

---

[1] A plea of not guilty by reason of mental disease or defect when not joined with a plea of not guilty, meant that Wenk admitted that but for lack of mental capacity he committed all the essential elements of the charged offenses. *See* Wis. Stat. § 971.06(d) (1977).

717

certain conditions were placed on him. Also admitted into evidence were Dr. Palermo's report and the report of Dr. Robert Chapman, a clinical psychologist employed by the state institution. Both of these reports recommended that Wenk be released, but only if certain conditions were placed upon him. Following the close of testimony, the assistant district attorney stated he was unsure whether he had met his burden of proof, but he urged the court to place conditions on Wenk if the trial court decided to release him.

¶ 5. The trial court, disagreeing with the doctors' ultimate recommendations, found that Wenk was still dangerous because Wenk had a long-standing substance abuse problem, and although Wenk had not abused drugs while he was confined, the trial court believed his drug relapse which occurred during his earlier conditional release indicated he still posed a danger to the community if released. The trial court commented that Wenk "would be back out in the community, could easily resort to inhalants very quickly, and at that point the community would be at risk." As a result, the trial court, in denying the petition, found that the State had met its burden of proof to a reasonable certainty by evidence that is clear, satisfactory and convincing that Wenk still remained dangerous.

## II. ANALYSIS.

■

¶ 6. The State, and later Wenk, points out that the applicable standard of review for the issue involved in this appeal is unclear. Case law addressing the standard of review when a jury decides a request for conditional release suggests that we must review the evidence in the light most favorable to the verdict while other cases have applied an erroneous exercise of dis-

cretion to commitment decisions. *See State v. Gebarski*, 90 Wis. 2d 754, 780, 280 N.W.2d 672 (1979); *State v. Gladney*, 120 Wis. 2d 486, 490, 355 N.W.2d 547 (Ct. App. 1984). We reaffirm the standard of review recently set forth in *State v. Seibert*, 220 Wis. 2d 308, 582 N.W.2d 745 (Ct. App. 1998), a case involving a sexual predator commitment under Chapter 980 of the Wisconsin Statutes (1997–98). There, we stated that a trial court's decision whether to grant a request for conditional release is subject to a discretionary standard of review. *Id.* at 314. Consequently, we look to see whether the trial court properly exercised its discretion in its determination that Wenk remained dangerous.

¶ 7. Wenk argues that the trial court erred in its determination that the State met its burden in proving his release would pose a risk of bodily harm to himself or others. As support for his position, Wenk first notes that the State admitted it had failed to met its burden of proof and urged the trial court to place restrictions on Wenk after he was released. Wenk also maintains that not only did the sole testifying expert witness support his petition for release, but also all the expert witnesses who examined him opined that he could be released under certain conditions. We are unpersuaded by his arguments.

¶ 8. We first observe that a factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record. *See State v. Friday*, 147 Wis. 2d 359, 370–71, 434 N.W.2d 85 (1989) (stating that it is not within the province of an appellate court to choose not to accept an inference drawn by a fact finder when the inference is reasonable). Thus, while our independent view of the evidence may have led us to a different result, we are bound to

accept the trial court's inferences unless they are incredible as a matter of law. *State v. King*, 187 Wis. 2d 548, 562, 523 N.W.2d 159 (Ct. App. 1994). The trial court's findings are not incredible.

¶ 9. First, the trial court was free to disregard the State's view of its evidence. The opinion of counsel, including the State's attorney, is not evidence. *See* Wis JI—Criminal 157 & 160. We note this is not a situation where the State failed to call any witnesses or submitted no evidence for the trial court's consideration; rather, the State presented an expert witness and had two other doctors' reports admitted into evidence. Second, the trial court was not obligated to accept any of the experts' opinions, even if the opinion was uncontradicted. *State v. Kienitz*, 227 Wis. 2d 423, 438–39, 597 N.W.2d 712 (1999). A trier of fact has the right to accept as much or as little of an expert's opinion as it finds probative. *Gebarski*, 90 Wis. 2d at 780. Here, the trial court accepted some parts of the doctors' opinions, but not all. Like the jury in *Pautz v. State*, 64 Wis. 2d 469, 219 N.W.2d 327 (1974), the trial court was free to disregard the experts' opinions and had a basis for doing so. *See id.* at 474–76. Our review of the reports satisfies us that the trial court, acting as the gatekeeper in Wenk's request for a conditional release, properly exercised its discretion in rejecting the three experts' opinions.

¶ 10. None of the doctors believed Wenk should be unconditionally released. Each recommended his release only under certain conditions. In Dr. Chapman's report, the doctor noted that Wenk had been previously diagnosed as suffering from bipolar disorder, as well as inhalant dependence. Dr. Chapman reasoned that Wenk could be conditionally released because Wenk's mental

illness appeared to be in remission. With regard to Wenk's addiction to Toluene, a paint thinner, Dr. Chapman acknowledged that Wenk used this drug when he engaged in his sexual criminal conduct, but Dr. Chapman's report contains the mistaken entry that "[d]uring the four years he was on conditional release [Wenk] reported no temptation to inhale, basically not thinking about inhaling Toulene [sic]." This is absolutely incorrect. Wenk's records clearly show that Wenk was recommitted, in part, as a result of his probation agent's discovery of his drug addiction. Consequently, the doctor's opinion that Wenk could be conditionally released was premised on his mistaken belief that Wenk had no difficulty with drugs during his previous release. Either Wenk minimized his Toluene abuse when discussing his history with Dr. Chapman, or Dr. Chapman failed to investigate the record. In either event, the trial court's failure to embrace Dr. Chapman's opinion was proper.

¶ 11. Dr. Smail also addressed Wenk's addiction. Dr. Smail testified that Wenk's inhalant dependence was in remission, but the doctor did admit that all of Wenk's criminal acts took place while he was under the influence of Toluene. Dr. Smail's recommendation in favor of conditional release was also based on Wenk's statement to him that "he had no personal concerns about re-offending or resuming his abuse of inhalants." This self-serving opinion was not only overly optimistic, but also, given Wenk's past conduct, not borne out by Wenk's history. Again, the trial court could properly reject Dr. Smail's opinion.

¶ 12. Finally, Dr. Palermo's report also commented on Wenk's drug use. The doctor notes that Wenk claimed that " 'I was so damned addicted I couldn't stop it,' " and that Wenk "blamed his addiction

for his offense in 1978." Dr. Palermo's report acknowledged that Wenk was abusing drugs when recommitted, but notwithstanding this history, Dr. Palermo recommended that Wenk be conditionally released, although he failed to set forth in his report any conditions which needed to be imposed on Wenk when he was released. This gaping hole in Dr. Palermo's report could easily have caused the trial court to lack confidence in the doctor's opinion.

¶ 13. Thus, while all three doctors expressed their knowledge of Wenk's previous drug use, the reasons underlying their opinions that Wenk could be released despite this impediment were either wrong or based on shaky grounds.

¶ 14. The differences of opinion between the doctors and the trial court lay with their prediction of Wenk's likely behavior when released. The trial court remarked that, although Wenk had not abused drugs for ten years, his sexual assaults were directly related to his mental illness brought on by his use of inhalants. Despite the doctors' beliefs that Wenk would not resort to drug use, the trial court observed that Wenk did abuse drugs the last time he was released. While the trial court acknowledged that predicting a person's future behavior is a difficult task, it pointed out that the past predictions of the psychiatric experts were wrong. Further, the trial court stated that its prediction for Wenk's future behavior was based on his past conduct; conduct that strongly suggested it was quite likely Wenk would again abuse drugs, given the pattern that emerged whenever Wenk was not confined.

> I don't think that there's an adequate showing that he is beyond the – resorting to the use of those inhalants. On the contrary, again, the doctors say the primary concern is that historic inhalant use, and I

don't think that there's a sufficient basis that I can find that there would be sufficient safeguards that the defendant would not be resorting to that inhalant abuse such that he would not be reverting to the previous conduct.

¶ 15. The trial court was concerned that Wenk's pattern of abusing drugs when unconfined posed too great a danger for the community for him to be released. The trial court's cogent decision, carefully setting out the legal standard and thoroughly explaining its analysis, is supported by the record. Thus, we affirm.

*By the Court.* —Order affirmed.