**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 9, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

Appeal No.    **2021AP2086-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CT275

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

TRAVIS R. BRALY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for La Crosse County: SCOTT L. HORNE, Judge.  *Affirmed*.

¶1    GRAHAM, J.[1]   Travis Braly appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI), third offense.  Braly contends

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version.

that the officer who stopped his vehicle lacked reasonable suspicion to believe he had committed a traffic violation, and therefore, the circuit court should have granted Braly's motion to suppress evidence obtained during the stop. I conclude that there was reasonable suspicion for the traffic stop, and accordingly, I affirm.

## BACKGROUND

¶2 Officer Jacob Donley stopped Braly's vehicle based on his observation that Braly's vehicle did not stop at a stop sign before entering an intersection, nearly striking Donley's passing squad car. During the traffic stop, Donley observed signs that Braly was intoxicated, and Braly consented to a blood test. The State charged Braly with operating while intoxicated and operating a vehicle with a prohibited alcohol concentration level, both as a third offense.

¶3 Braly moved to suppress all evidence obtained as a consequence of the traffic stop. In his motion, Braly denied "making an incorrect stop at the intersection." He claimed that Donley did not witness him commit any traffic infraction, and that the traffic stop was instead based on an inchoate hunch and Donley's incorrect view of the law. Specifically, Braly argued that he was not required to stop before his vehicle reached the stop sign, and further, that Donley only "thought" that Braly's vehicle was going to enter the intersection without stopping. Therefore, Braly claimed that there was no reasonable suspicion for the stop, rendering it unlawful.

¶4 Donley testified as follows at the suppression hearing. On the night in question, he was driving his squad car on County Highway M in the Village of West Salem. Franklin Street crosses Highway M, and there is a stop sign but no crosswalk at that intersection. As Donley traveled northbound on Highway M, Braly's vehicle was travelling on Franklin Street approaching the intersection. As

2

Donley's squad car passed the intersection, he observed Braly's vehicle pass the stop sign and come into the intersection. According to Donley, he "jerked [his] car to the left to avoid being struck" by Braly's vehicle. Donley then initiated a traffic stop. He testified: "I pulled [Braly's] vehicle over because it ran the stop sign and came out into the intersection of Highway M, nearly striking the side of my squad car before coming to a stop in the northbound lane of Highway M."

¶5 During the suppression hearing, the prosecutor introduced video footage from the dashboard-mounted and side-mounted cameras in Donley's squad car.[2] The prosecutor and defense counsel both referenced portions of the footage to support their arguments.[3]

¶6 The prosecutor argued that Donley had reasonable suspicion based on Braly's failure to stop at the stop sign. In contrast, Braly's counsel suggested that Donley had overreacted and that Braly had not violated any traffic law. Counsel pointed to WIS. STAT. § 346.46(1) and (2)(c), and argued that Braly was not required to stop before the stop sign because there was no clearly marked stop line or crosswalk in the roadway. Counsel further argued that Donley "didn't need

---

[2] Based on my independent review of the footage, I make the following observations, which are consistent with the observations made by the circuit court. The footage from the dashboard camera shows the speed at which Braly's vehicle is travelling as it approaches the intersection and rolls past the stop sign. However, Braly's vehicle is no longer in the frame of the dashboard camera at the time the vehicle comes to a complete stop. The footage from the side-mounted camera shows the headlights from Braly's vehicle approaching the rear passenger-side windows of the squad car, and then appearing to come to a complete stop as the squad car passes. Based on the camera angle, it is not possible to discern whether or how far Braly's vehicle was in the intersection at the time it stopped.

[3] During the circuit court proceedings, defense counsel attempted to establish that Braly's view of the intersection would have been obstructed by trees near the intersection, and that Braly would have had to pull in front of the stop sign to see past the trees. Braly does not raise this argument in his appellate briefing and, therefore, has abandoned it on appeal.

to slam on his brakes to avoid a collision," and that the video from the squad car showed only "a slight deviation to the left" as the squad car passed the intersection.

¶7 The circuit court denied Braly's motion to suppress, determining that Donley had "a valid reason to stop Mr. Braly's vehicle as a result of the officer's perception that the vehicle had entered the intersection without coming to a stop." As the court explained, under WIS. STAT. § 346.46(1) and (2)(c), Braly did not have to stop his vehicle "prior to the stop sign itself," but he was required "to stop the vehicle before entering the intersection." The court credited Donley's testimony, explaining that it was uncontroverted and there was no evidence contradicting his description of events. The court acknowledged that the squad camera footage was not definitive, presumably because it does not show precisely where Braly's vehicle had stopped. Nevertheless, the court explained that the video clearly shows that Braly's vehicle "rolled through the stop sign," and further, that "it appears likely from the speed and proximity to the intersection that Mr. Braly would have had a difficult time stopping before entering the intersection." Further, the court found that Donley's evasive maneuver was "consistent with his description of events." Accordingly, the video footage tended to corroborate Donley's testimony that Braly's vehicle did not stop before entering the intersection.

¶8 Braly pled no contest to a charge of operating while intoxicated, third offense. He challenges the circuit court's decision to deny his motion to suppress.

## DISCUSSION

¶9 The United States Constitution and the Wisconsin Constitution both prohibit unreasonable searches and seizures. U.S. CONST. amend. IV; WIS. CONST. art. 1 § 11. "'The temporary detention of individuals during a stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.'" *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (quoted source omitted). Therefore, the "stop must not be unreasonable under the circumstances." *Id.*

¶10 A traffic stop is reasonable if supported by reasonable suspicion that a traffic violation has been or will be committed.[4] *Id.*; *see also State v. Houghton*, 2015 WI 79, ¶¶28-30, 364 Wis. 2d 234, 868 N.W.2d 143. The State has the burden of establishing that the stop was based on reasonable suspicion. *State v. Meddaugh*, 2022 WI App 12, ¶13, 401 Wis. 2d 134, 972 N.W.2d 181. To meet that burden, the State "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoted source omitted). Ultimately, what constitutes reasonable suspicion necessary to justify an investigative stop of a vehicle is a "'common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience.'"

---

[4] At points in his appellate briefing, Braly appears to suggest that probable cause was required to stop Braly's vehicle. To the extent Braly is making that argument, I reject it. *See State v. Houghton*, 2015 WI 79, ¶¶28-30, 364 Wis. 2d 234, 868 N.W.2d 143 (explaining that "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops").

*State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394 (quoted source omitted).

¶11    Appellate review of an order granting or denying a suppression motion presents an issue of constitutional fact.  *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302.  An appellate court will uphold the circuit court's findings of fact unless they are clearly erroneous, and will independently review the application of constitutional principles to those facts.  *Id.*

¶12    As noted, the circuit court determined that Donley had reasonable suspicion to stop Braly's vehicle for violating WIS. STAT. § 346.46(1) and (2)(c).[5] In his appellate briefing, Braly contends that § 346.46 should not be interpreted as requiring a person to stop prior to reaching a stop sign.  However, Braly's interpretation of § 346.46 was adopted by the circuit court, and the State makes no contrary arguments on appeal.[6]   Indeed, the court determined that there was

---

[5]  WISCONSIN STAT. § 346.46(1) provides, in pertinent part:

> [E]very operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon a highway which is not controlled by an official stop sign or traffic signal.

Similarly, WIS. STAT. § 346.46(2)(c) provides:

> If there is neither a clearly marked stop line nor a marked or unmarked crosswalk at the intersection or if the operator cannot efficiently observe traffic on the intersecting roadway from the stop made at the stop line or crosswalk, the operator shall, before entering the intersection, stop the vehicle at such point as will enable the operator to efficiently observe the traffic on the intersecting roadway.

[6]  For purposes of this opinion, I assume without deciding that Braly's interpretation of WIS. STAT. § 346.46 is correct.

reasonable suspicion to stop Braly, not because Braly failed to stop prior to reaching the stop sign, but rather because the court found that Braly failed to stop prior to entering the intersection.

¶13    Braly does not dispute that WIS. STAT. § 346.46(1) and (2)(c) require a driver in his situation to stop prior to entering the intersection. He instead contends that the circuit court should not have credited Donley's testimony that Braly's vehicle "came out into the intersection of Highway M," ultimately "coming to a stop in the northbound lane of Highway M." An appellate court will not normally substitute its judgment about the credibility of witness testimony for that of the circuit court. *State v. Echols*, 175 Wis. 2d 653, 671, 499 N.W.2d 631 (1993).

¶14    I begin by observing that, based on my independent review, I agree with the circuit court that the squad camera footage corroborates Donley's testimony that Braly's vehicle entered the intersection before coming to a stop in the northbound lane. To be sure, it is not possible to discern from the footage the precise location of Braly's vehicle at the time it ultimately came to a complete stop. *See supra*, n.2. However, the footage from the dashboard camera clearly shows the speed at which Braly's vehicle passed the stop sign and its proximity to the intersection, and those observations alone are specific and articulable facts that would have led a reasonable officer in a passing squad car to believe that the vehicle was not going to and did not come to a complete stop before entering the intersection. *See Post*, 301 Wis. 2d 1, ¶10. Therefore, I agree with the circuit court that the video footage helps support the conclusion that Donley reasonably suspected that Braly violated WIS. STAT. § 346.46.

¶15    Braly makes several arguments that Donley's testimony was not credible and that the circuit court's determination that it was credible is clearly erroneous. I consider and reject each of Braly's arguments in turn.

¶16    First, Braly points out that, in his "Statement of Probable Cause" filed shortly after the traffic stop, Donley indicated that Braly did not stop at the stop sign, but did not indicate that Braly entered the intersection. I do not agree that this statement undermines the credibility of Donley's testimony. Donley accurately stated that Braly's vehicle did not stop at the stop sign, but he did not say one way or the other whether the vehicle entered the intersection before coming to a complete stop. The apparent purpose of Donley's statement was to obtain a probable cause determination from the duty judge that Braly had committed an OWI-related offense, and, to that end, Donley was not required to list all of the facts and circumstances that led to the initial traffic stop.

¶17    Second, Braly emphasizes that Donley testified that he "jerked [his] car to the left to avoid being struck" by Braly's vehicle, but that the circuit court found that the squad camera footage shows just a "slight immediate hesitation or swerve." According to Braly, this discrepancy shows that, "[a]t best, Donley is exaggerating the facts, and at worst, he is misstating them," but that "either way he is not credible." Again, I disagree. Braly does not dispute that Donley made an evasive maneuver as he passed Braly's vehicle—his dispute is limited to the magnitude of that evasive maneuver, and whether it is best characterized as a "jerk" or a "swerve." But the magnitude of Donley's evasive maneuver is not dispositive—as discussed above, the dispositive question is whether a reasonable officer, observing the facts, would have reasonable suspicion to believe that Braly had entered the intersection. Regardless of its magnitude, the fact that Donley

made an evasive maneuver tends to corroborate Donley's testimony that Braly's vehicle entered the intersection as Donley's squad car passed.

¶18    Third, Braly suggests that Donley admitted on cross-examination that the car driving behind his squad car did not have to swerve to avoid Braly's vehicle.  There are several reasons that Braly's argument on this point is not persuasive.  As an initial matter, Donley's testimony on this point was equivocal at best.[7]  Additionally, even if the car behind Donley did not swerve, that does not necessarily mean that Braly's vehicle stopped before it entered the intersection.  Finally, "a factual finding is not clearly erroneous merely because a different fact finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417.

¶19    I acknowledge, as the circuit court did, that the evidence does not conclusively demonstrate that Braly violated WIS. STAT. § 346.46.  However, the State does not need conclusive evidence to meet its burden of proof.  For the stop to be constitutional, a reasonable officer in Donley's position need only specific and articulable facts which, taken together with rational inferences from those facts, would lead the officer to have reasonable suspicion that Braly committed a

---

[7] Specifically, the exchange between defense counsel and Officer Donley went as follows:

> Q. … [T]here was also a vehicle that was behind you.  Correct?
>
> A.  I believe so.
>
> Q. And it's true that the vehicle didn't swerve to the left.  Correct?
>
> A.  Correct.  I don't know for sure, I'm sorry, but I don't think so.

traffic violation. *See Post*, 301 Wis. 2d 1, ¶10. Like the circuit court, I conclude that the State met its burden. [8]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[8] Braly's appellate counsel also advances a new argument in Braly's reply brief that fails on multiple grounds, as I now explain. Counsel asserts that Braly was "charged" for failing to yield the right-of-way under a different statute, WIS. STAT. § 346.18(3). As best as I understand it, counsel makes this assertion to support a suggestion that the circuit court should not have relied on WIS. STAT. § 346.46(1) and (2)(c) when it determined that there was reasonable suspicion for the traffic stop. There is no factual or legal support for this argument, which is borderline frivolous. Among other things, counsel does not point to anything in the record to support the assertion about Braly's "charges." Instead, counsel points to an "Incident Report Narrative" contained in an appendix submitted along with Braly's reply brief, but this court has repeatedly cautioned attorneys against citing documents that are contained in an appendix but not the record. *See, e.g.*, *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322; *South Carolina Equip., Inc. v. Sheedy*, 120 Wis. 2d 119, 125-26, 353 N.W.2d 63 (Ct. App. 1984). Additionally, § 346.18(3), which is a general rule of right-of-way, expressly references § 346.46. *See* § 346.18(3) (providing that "an operator of a vehicle shall stop as required by s. 346.46(2)(a), (b), or (c) before entering a through highway ….") Any argument that it was improper for the circuit court or the State to rely on these related statutes is undeveloped and unpersuasive. Finally, any such argument is forfeited as well. Braly's trial counsel cited § 346.46(1) and (2)(c) during the circuit court proceedings as the pertinent authority on whether there was reasonable suspicion for the traffic stop. Likewise, in his opening appellate brief, Braly cites § 346.46(1) and (2)(c) but not § 346.18(3). *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (providing that a party forfeits arguments not raised in the circuit court); *Swartout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981) (providing that, as a general rule, this court does not consider issues raised by appellants for the first time in a reply brief on appeal).