HOIDA, INC., Plaintiff-Appellant-Petitioner,

v.

M&I MIDSTATE BANK and
McDonald Title Company, Inc.,
Defendants-Respondents,

William C. HERBERT, Defendant-(In T.ct.).

Supreme Court

*No. 2003AP2108. Oral argument November 8, 2005.
—Decided June 13, 2006.*

2006 WI 69

(Also reported in 717 N.W.2d 17.)

For the plaintiff-appellant-petitioner there were briefs by *Scott R. Halloin* and *Mallery & Zimmerman, S.C.*, Milwaukee, and oral argument by *Scott R. Halloin.*

For the defendant-respondent M&I Midstate Bank, there was a brief by *Russell T. Golla* and *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point, and oral argument by *Russell T. Golla*.

For the defendant-respondent McDonald Title Company, Inc., there was a brief by *William J. Ewald* and *Denissen, Kranzush, Mahoney & Ewald, S.C.*, Green Bay, and oral argument by *William J. Ewald*.

An amicus curiae brief was filed by *John E. Knight, James E. Bartzen, Kirsten E. Spira*, and *Boardman, Suhr, Curry & Field LLP*, Madison, on behalf of the Wisconsin Bankers Association.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a court of appeals decision that affirmed the circuit court's grant of summary judgment dismissing the claims of Hoida, Inc. (Hoida) against defendants M&I Midstate Bank (M&I) and McDonald Title Company, Inc. (McDonald Title). Hoida is a subcontractor that incurred losses on a building project gone awry when the general contractor and the owner of the property fraudulently misappropriated approximately $650,000 of the project's construction loan proceeds. M&I and McDonald Title were the lending bank and the disbursing agent, respectively, on the project. Hoida claimed that it was a third-party beneficiary of the owner's loan agreement with M&I. Hoida also claimed that the defendants were negligent because they did not identify the subcontractors and materialmen who worked on the project, did not verify that the progress on the work was sufficient to justify the release of loan funds, and did not secure lien waivers from Hoida, which Hoida alleges would have prevented its losses. The defendants deny Hoida's claims. They also make a prima facie showing that they did not breach the duty of

ordinary care under the circumstances by not undertaking the tasks Hoida identified and that the lack of lien waivers was not a cause-in-fact of Hoida's damage. The defendants also contend that public policy precludes Hoida's claim.

¶ 2. We conclude that Hoida has not stated a third-party beneficiary claim, and that it has not provided facts to controvert M&I's prima facie showing that it did not breach the duty of ordinary care under the circumstances. We also conclude that the claim Hoida seeks to establish against M&I is barred by the legislative determination of priority as between a lender and a subcontractor set out in Wis. Stat. § 779.01(4) (2003–04)[1] and Wis. Stat. § 706.11. And finally, while we do not conclude that Hoida has overcome McDonald Title's prima facie showing that it did not breach the duty of ordinary care under the circumstances, if we were to do so, Hoida's negligence claim would be precluded by judicial public policy. Accordingly, we affirm the court of appeals.

## I. BACKGROUND

¶ 3. In October 1996, The Villager at Nashotah, L.L.C. (Villager) entered into a construction loan agreement with M&I to borrow money to build four eight-unit apartment buildings in Plover, Wisconsin. The agreement between M&I and Villager was written and called for M&I to lend a total of $1,320,000 to Villager. The loan agreement set out the limits of M&I's responsibilities and it was secured by four separate real estate mortgages. Villager presented four initial draw requests for loan funds at the closing, and M&I disbursed

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

those funds for project start-up. M&I made arrangements with McDonald Title to make the remaining disbursements of the loan. There was no written agreement between M&I and McDonald Title to establish the terms of the disbursement arrangement; their agreement was oral, arranged between the M&I loan officer for the project, Thomas Domaszek (Domaszek), and Robert McDonald (McDonald) of McDonald Title.

¶ 4. The loan agreement between M&I and Villager stated that M&I "shall not be responsible for any aspect of the Construction . . . or the procurement of lien waivers," and that M&I would have "no obligation or liability to contractors, subcontractors, laborers [or] materialmen."[2] It also gave M&I the right to inspect the property at any time during construction, but explicitly stated that M&I "is in no way obligated to do so."[3] Another provision required Villager to forward notices

[2] The exact language of the relevant contract provisions is as follows:

3. DUTIES OF OWNER

a) M&I is acting solely as a mortgage lender and shall not be considered a principal with respect to the purchase of any goods or materials or Construction of any portion of the Property secured by the Mortgage. M&I shall not be responsible for any aspect of the Construction . . . or the procurement of lien waivers . . . .

b) M&I shall have no obligation or liability to contractors, subcontractors, laborers, materialmen, or the persons or lien claimants furnishing goods or services for payment under any circumstances, it being intended and agreed that such persons are not and shall not become beneficiaries of this Agreement in any respect, unless M&I assumes completion of project under paragraph 8 and then only as to those items authorized by M&I to be completed or provided at the expressed request of M&I.

[3] This language is in the fifth portion of the agreement, titled "Survey, Appraisals and Inspections":

to M&I any time that an individual or business providing goods or services to the project gave notice or demand relating to payment.[4]

¶ 5. Another portion of the contract, "Owner's Deposit and Disbursement of Construction Funds," sets forth the respective responsibilities of M&I and Villager with regard to disbursement of construction funds. Among other provisions within that section, provision (d), was a requirement that construction funds be disbursed only upon the owner's order and satisfaction of the requirements within the lending contract.[5] The contract also gave M&I the right, at its option, to complete construction if any breach of the contract occurred.[6]

---

b) M&I is given the right to inspect the Property at any time during Construction, but is in no way obligated to do so.

[4] This provision of the contract reads as follows:

4. NOTICE AND CONSTRUCTION DOCUMENTS

a) Upon receipt of any notice or demand whatsoever from any contractor, subcontractor, laborer, materialman, or other person furnishing goods or services (including without limitation any lien notice or claim notice of intent to file lien claim), the Owner shall immediately forward such notice to M&I.

[5] The relevant portion of this provision is as follows:

d) Except as otherwise hereafter provided, all funds for Construction (including Owner's Deposit and Loan Proceeds) shall be disbursed only upon the Owner's order (except under paragraph 8) and satisfaction of the requirements of this Agreement and M&I. M&I shall have the right to determine the time and other requirements under which disbursements shall be made and shall have the right to take any action which it deems necessary to complete Construction to its satisfaction (including the right to complete Construction under paragraph 8).

[6] Provision 8 contains "M&I's Right to Complete Construction."

¶ 6. M&I and McDonald Title agreed that McDonald Title would act as M&I's agent for disbursing the loan proceeds. Upon receipt of requests for payment from the general contractor, Packard Construction, Inc. (Packard), McDonald Title would follow a payment process and disburse funds. This payment process required the completion of a written Application and Certification for Payment form that contained Packard's itemized application for payment, the project architect's signed certificate for payment and Villager's signed certificate, as owner/borrower, authorizing payment in the amount of the application.

¶ 7. In February 1997, Packard subcontracted with Hoida for prefabricated wooden wall sections and roof trusses. Hoida commenced construction, and by February 26, Hoida had invoiced Packard for $5,705 of its work. The invoices required payment within 15 days. On March 5, 1997, as a result of not being paid, Hoida wrote to Villager and explained that pursuant to Wis. Stat. § 779.02, it possessed lien rights on the project property. However, Hoida did nothing further after sending the letter, and it continued to produce and ship materials to the construction site until April 23, 1997. Hoida also continued to invoice Packard, sending 51 separate invoices through the end of April.[7] Hoida was paid only $25,000 over the course of those two months.

¶ 8. In late May or early June, after Hoida had delivered all of the product it contracted with Packard to produce, Kenneth Larsen of Hoida contacted Domaszek to advise him that Hoida had not yet been

---

[7] The last legible date on the invoices in the record is April 24, 1997; there are additional and presumably subsequent invoices, but the date is either absent or illegible.

paid. McDonald Title and M&I became concerned at about the same time because the project did not appear to be progressing as planned. On June 5, 1997, almost three months after Hoida's letter to Villager giving notice that it claimed lien rights, Hoida served Villager with a Written Notice of Intent to File Construction Lien Claims pursuant to Wis. Stat. § 779.06.[8] On June 6, 1997, McDonald informed Packard that no more funds would be provided until McDonald Title and M&I received lien waivers for the funds that had been released.

¶ 9. On July 7, 1997, McDonald sent a letter to Villager, to the attention of Mike Imperl (Imperl), stating that two subcontractors had filed separate notices of Intent to File Liens and that "obviously indicates that they haven't been paid." He requested a response and said that he would seek a replacement contractor if Villager did not take appropriate action. Throughout the month of July, McDonald attempted to reach Imperl to advise him of his concerns about the lack of construction progress and administration of the project.

¶ 10. Also in July, McDonald made visits to the construction site, and in the course of those visits, discovered that two buildings that should have been secured and locked were not. McDonald became worried that the buildings would not be completed by winter. On July 28, McDonald sent a letter to Imperl and three others associated with Villager, expressing concern about the project. He informed them that in spite of repeated requests, Packard had not provided

---

[8] According to Wis. Stat. § 779.06(2), Hoida was required to give notice more than 30 days before the filing of a claim for lien.

construction breakdowns; Packard had failed to provide lien waivers; at least two subcontractors had not been paid; M&I had to advance money to them to keep them on the job; and generally, the project appeared to be progressing very slowly. Also on July 28, Hoida filed a Claim for Lien on the project.

¶ 11. On August 28, 1997, McDonald wrote to Imperl and John Christianson (Christianson), the owner of Packard, to tell them that the buildings must be locked and secure before any further funding could occur. It was subsequently discovered that Christianson and Imperl had misappropriated $650,000 to $700,000 of the construction funds. Imperl was later indicted on multiple counts of bank fraud. The architect for the project, William Herbert, also averred that his signature was forged on some of the draw requests that M&I paid through McDonald Title.

¶ 12. M&I commenced foreclosure on Villager's mortgages in order to complete the project and recover its losses. Hoida also obtained judgments against Villager, Packard and Christianson, but remained unpaid. Hoida's unpaid invoices total $291,582.81.[9]

¶ 13. In May of 2001, Hoida sued M&I and McDonald Title. Hoida, M&I and McDonald Title all filed motions for summary judgment. The circuit court concluded that there was no existing law upon which the court could conclude that M&I and McDonald Title owed a duty to protect Hoida against the losses that it incurred. It concluded Hoida had not met its burden of showing that a duty to collect lien waivers existed, and therefore, Hoida's claim failed to state a claim for relief.

---

[9] Hoida estimates that it is owed $548,175.68, including interest.

It granted M&I and McDonald Title's motion for summary judgment, dismissing all claims against them.

¶ 14. Hoida appealed, and the court of appeals held that Hoida had alleged each of the elements necessary to establish a negligence claim, but affirmed the circuit court's grant of summary judgment for the defendants on the ground that public policy considerations precluded recovery. It cited Wisconsin Statutes, ch. 779, that places lenders above subcontractors in lien prioritization on construction projects, as support for holding that Hoida's claim was barred by public policy. *Hoida, Inc. v. M&I Midstate Bank,* 2004 WI App 191, ¶ 23, 276 Wis. 2d 705, 688 N.W.2d 691.[10] We review that decision.

## II. DISCUSSION

### A. Standard of Review

¶ 15. This case requires us to review summary judgment dismissing Hoida's claims against the defendants. Whether summary judgment was properly granted is a question of law. *Fortier v. Flambeau Plastics Co.,* 164 Wis. 2d 639, 651–52, 476 N.W.2d 593 (Ct. App. 1991). We independently review a grant or denial of summary judgment, applying the same method as the circuit court. *Cole v. Hubanks,* 2004 WI 74, ¶ 5, 272 Wis. 2d 539, 681 N.W.2d. 147 (citing *Sawyer v. Midelfort,* 227 Wis. 2d 124, 135, 595 N.W.2d 423 (1999)).

---

[10] The court of appeals cited policy as evidenced in the statutes for its decision: "Establishing for Hoida a new claim against M&I and McDonald would contravene the public policy choices of the legislature." *Hoida, Inc. v. M&I Midstate Bank,* 2004 WI App 191, ¶ 23, 276 Wis. 2d 705, 688 N.W.2d 691.

Whether public policy precludes a negligence claim is also a question of law, subject to our independent review. *Gritzner v. Michael R.,* 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906.

B. Summary Judgment Principles

¶ 16. Every decision on a motion for summary judgment begins with a review of the complaint to determine whether, on its face, it states a claim for relief. *Westphal v. Farmers Ins. Exch.,* 2003 WI App 170, ¶ 9, 266 Wis. 2d 569, 669 N.W.2d 166. If it does, we examine the answer to see if issues of fact or law have been joined. *Id.* After we have concluded that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. *Id.* When they do so, we review the opposing party's affidavits to determine whether there are any material facts in dispute, or inferences from undisputed material facts, that would entitle the opposing party to a trial. *Id.* "We will affirm a grant of summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Baumeister v. Automated Prods., Inc.,* 2004 WI 148, ¶ 11, 277 Wis. 2d 21, 690 N.W.2d 1 (citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," so long as there is no disputed fact that is material to the claim or defense made. *Id.* (quoting *City of Elkhorn v. 211 Centralia Corp.,* 2004 WI App 139, ¶ 18, 275 Wis. 2d 584, 685 N.W.2d 874).

## C. Hoida's Claims

¶ 17. Hoida claims that M&I and McDonald Title are liable for the damages it sustained based on the following allegations set out in the complaint: (1) the defendants had a duty of "identification of subcontractors and materialmen at the project"; (2) the defendants had a duty of "determination that the work has reached the proper stage to justify disbursement"; (3) the defendants had a duty of "collection of lien waivers from contractors, subcontractors and suppliers" before disbursement of loan funds were made; (4) the defendants "owed a duty to the subcontractors and material suppliers, including Hoida, because [the subcontractors and material suppliers] were third-party beneficiaries and also because it was reasonably foreseeable that any failure by [the defendants] . . . could harm subcontractors and material suppliers, including Hoida"; and (5) the defendants breached these duties causing damage to Hoida. M&I and McDonald Title denied all of Hoida's allegations.

¶ 18. The first step of our summary judgment analysis is to determine whether the complaint sets forth a claim for relief. *Trinity Evangelical Lutheran Church & Sch.-Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶ 32, 261 Wis. 2d 333, 661 N.W.2d 789. It appears that Hoida attempted to plead both a claim for breach of contract, as a third-party beneficiary, and a claim for negligence.[11]

---

[11] Hoida's briefs attempt to raise issues of misrepresentation. However, the circuit court declined to review that issue, noting that misrepresentation was not pleaded and therefore was not before the court. Our independent review of the

### 1. Breach of contract

¶ 19. The complaint does not allege whether the duties outlined in ¶ 17 above arise from a loan document, an agreement between M&I and McDonald Title or from some other agreement that could give rise to a contract theory of recovery. It also does not allege that Hoida was an intended beneficiary of any such agreement. However, in order to state a claim based on third-party beneficiary status, the complaint must allege facts sufficient to show that the agreement that was breached was entered into primarily and directly for plaintiff's benefit or the complaint must have attached a copy of the agreement that demonstrates that purpose. *Schell v. Knickelbein,* 77 Wis. 2d 344, 349, 252 N.W.2d 921 (1977). Hoida did neither. Therefore, its attempted breach of contract claim fails to state a claim for relief.

### 2. Negligence

¶ 20. Hoida alleged that the defendants breached the duty of care owed to it, not by doing some act that caused harm, but by failing to perform certain tasks that Hoida claims M&I and McDonald Title had an obligation to perform. Hoida does not assert that this obligation arose from any heightened duty of care, such as a fiduciary duty. Rather, it pleads that the duty of ordinary care required M&I and McDonald Title to identify the subcontractors and materialmen for the project; to verify that sufficient work on the project had been completed to "justify disbursement"; and to collect

complaint confirms that Hoida did not plead misrepresentation. Therefore, we do not address it.

lien waivers from Hoida before disbursing funds from Villager's loan. Hoida characterizes these obligations as "basic industry standards" of conduct for lenders and their agents, and it claims that if the lender does not complete these tasks, it is reasonably foreseeable that subcontractors and materialmen will be harmed.

¶ 21. Wisconsin's common law of negligence has developed primarily through cases of personal injury and property damage. The specific question of a lender's liability to a third party who suffers losses, where the lender and the third party are not in privity of contract and the lender has no fiduciary duty to the third party, is a question of first impression in Wisconsin. We review established common law negligence principles as our starting point.

¶ 22. Generally stated, "[t]he test of negligence is whether the conduct foreseeably creates an unreasonable risk to others." *Morgan v. Pa. Gen. Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979) (citing, *e.g., Coffey v. Milwaukee*, 74 Wis. 2d 526, 537, 247 N.W.2d 132 (1976); *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 857, 236 N.W.2d 1 (1975); *A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484–85, 214 N.W.2d 764 (1974)). The risk of harm need not be to a particular plaintiff. *Morgan,* 87 Wis. 2d at 732. The allegedly negligent act must also cause an injury. "A cause of action in negligence requires proof that the defendant failed to exercise ordinary care and that the act or omission complained of was the cause of the plaintiff's injury." *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 92, 280 N.W.2d 280 (1979) (citing *Greiten v. La Dow,* 70 Wis. 2d 589, 601, 235 N.W.2d 677 (1975)).

¶ 23. For decades, Wisconsin courts have engaged a four-element analysis to determine whether an actionable claim for negligence has been stated. We require a plaintiff to plead facts, which if proved true, would establish the following four elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]."[12] *Gritzner,* 235 Wis. 2d

---

[12] The dissent implies that Wisconsin does not employ the four-element test for actionable negligence; it relies heavily on *Palsgraf v. Long Island Railroad Co.,* 162 N.E. 99 (N.Y. 1928). Dissent, ¶¶ 64–65. In so doing, the dissent ignores the use of the four-element test in current decisions, one of which was authored by the author of the dissent herein. *See, e.g., Antwaun A. v. Heritage Mut. Ins. Co.,* 228 Wis. 2d 44, 55, 596 N.W.2d 456 (1999) (Justice Bradley explaining for the majority, "As with any negligence claim, Antwaun A. must show that there exists: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury"); *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995) (specifying that the same four elements must exist in order to establish a cause of action for negligence in Wisconsin).

In addition, juries find facts, but whether a duty exists and the scope of such a duty are questions of law for the courts to decide. *See, e.g., Ceplina v. So. Milwaukee School Board,* 73 Wis. 2d 338, 341–42, 243 N.W.2d 183 (1976) (concluding that whether the school board had a duty to the injured child and the scope of any such duty were questions of law for a court to decide); *Johnson v. Seipel,* 152 Wis. 2d 636, 643, 449 N.W.2d 66 (Ct. App. 1989) (concluding whether Seipel owed a duty to the Johnsons in regard to his use of boats on the river in front of the Johnsons' property, and what the scope of any such duty was, are questions of law).

781, ¶ 19; *see also Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995).

¶ 24. Wisconsin courts have also reserved the right to deny the existence of a negligence claim based on public policy reasons: "[I]n Wisconsin, even if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors." *Smaxwell v. Bayard,* 2004 WI 101, ¶ 39, 274 Wis. 2d 278, 682 N.W.2d 923. The legislature also establishes public policy for the state through the statutes it enacts, and we are limited "to applying the policy the legislature has chosen to enact, and may not impose [our] own policy choices." *Fandrey v. Am. Family Mut. Ins. Co.,* 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345.[13]

¶ 25. The analysis of the four elements necessary to state a claim for actionable negligence is the first consideration for a court when deciding motions for

---

[13] As we explained in *Fandrey v. American Family Mutual Insurance Co.,* 2004 WI 62, 272 Wis. 2d 46, 680 N.W.2d 345, the application of public policy as set out in the statutes and the application of judicial public policy factors are two very different concepts.

> The legislature's determination of "public policy" in a broader context relates to what is politically appropriate for the state as a whole. When "public policy" is used in this context, it is true that the judiciary is limited to applying the policy the legislature has chosen to enact, and may not impose its own policy choices. This stands in stark contrast to the judiciary's use of "public policy," formerly referred to as "proximate cause," which refers to the practice of limiting tort liability as part of the legal cause analysis "on a case-by-case basis."

*Id.,* ¶ 16 (citations omitted).

summary judgment, even if an appellate court can directly consider the judicial public policy factors to preclude liability when the facts are particularly clear. *Alvarado v. Sersch,* 2003 WI 55, ¶ 18, 262 Wis. 2d 74, 662 N.W.2d 350; *see also Gritzner,* 235 Wis. 2d 781, ¶ 24. This is because "negligence and liability are distinct concepts." *Alvarado,* 262 Wis. 2d 74, ¶ 17.

¶ 26. We have not addressed previously the precise question before us, and therefore have given no guidance for the pleading requirements for a claim of lender liability due to an alleged failure to undertake certain tasks. Further, undisputed material facts that were not pleaded will be helpful to our explanation of this new claim that Hoida seeks to develop. For these reasons, we will assume, while not deciding, that the complaint states an actionable claim for negligence in regard to M&I and McDonald Title.

¶ 27. The first element of the four-element analysis for a claim of actionable negligence, duty, involves two aspects: (1) the existence of a duty of ordinary care; and, (2) an assessment of what ordinary care requires under the circumstances. *Hatleberg v. Norwest Bank Wis.,* 2005 WI 109, ¶¶ 17–18, 283 Wis. 2d 234, 700 N.W.2d 15. We begin with the duty of ordinary care.

¶ 28. In *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956), we reviewed the established concept that in order to find negligence, a court first must decide whether the defendant owed a duty to the plaintiff. *Id.* at 181–82. We cited previous case law and secondary sources as foundation for our statement that "it is not necessary in order for an act to be negligent that the actor should reasonably have foreseen the particular injury which did result from such act so long as he should have foreseen that harm was

likely to be caused to someone by reason [of his act]." *Id.* at 182 (citing *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952)).

¶ 29. *Klassa* explained that despite this broad, general statement of duty, courts could conclude that an act that caused harm did not constitute negligence under certain circumstances: "Whenever a court holds that a certain act does not constitute negligence because there was no duty owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination." *Klassa,* 273 Wis. at 183. In making that assertion, we explained that the shifting sands of society's ideas about responsibility drive courts' conclusions with regard to what the duty of ordinary care requires under the circumstances presented.[14] *Id.* at 183–84. However, we also have explained that the duty of ordinary care is not a judicial public policy factor, but rather, it is "an ingredient in the determination of negligence." *A.E. Inv.,* 62 Wis. 2d at 484.

---

[14] In *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956), we explained:

> For more than two generations it has been repeated that there can be no duty toward an unborn child; now all of a sudden the cases on prenatal injury are going the other way. It used to be held that one who gets himself into danger owes no duty to a rescuer injured in saving him; now all at once the duty is there. It was once well-settled law that one who negligently made misrepresentations could owe no possible duty to a third person into whose hands they might come; there is now respectable authority that in some situations such a duty can be found. It was once the law that a landlord leasing a small shop for the admission of the public owed no duty to those who entered; all of the recent cases agree that the duty is clear.

*Id.* at 183–84 (quoting William L. Prosser, *Palsgraf Revisited,* 52 Mich. L. Rev. 1, 14–15, (1953)).

¶ 30. To summarize, one has a duty to exercise ordinary care under the circumstances.[15] *Gritzner,* 235 Wis. 2d 781, ¶ 20. If a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances, and is therefore negligent. *Rockweit,* 197 Wis. 2d at 424 (citation omitted). Ordinary care involves the concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his act. *Greiten,* 70 Wis. 2d at 602; *Osborne v. Montgomery,* 203 Wis. 223, 234, 234 N.W. 372 (1931).

¶ 31. These concepts, taken together, establish certain relationships. The existence of a duty of ordinary care encompasses what is reasonable according to facts and circumstances present in each individual case. Whether there has been a breach, the next element of a negligence claim, will depend in part upon what is reasonable to require a person to do, or to refrain from doing, under the circumstances. *Hatleberg,* 283 Wis. 2d 234, ¶¶ 18–20.

---

[15] The dissent also mischaracterizes the holding of the majority opinion as having concluded that M&I and McDonald Title owed no duty to Hoida. Dissent, ¶ 58. However, the majority opinion clearly concludes that M&I and McDonald Title have a duty to exercise ordinary care under the circumstances. *See infra,* ¶¶ 30–32. What the majority opinion turns on is whether the circumstances of this case require M&I and McDonald Title to undertake all the affirmative acts that Hoida requests. *See infra,* ¶ 32.

¶ 32. Therefore, what is within the duty of ordinary care depends on the circumstances under which the claimed duty arises. For example, what is comprised within ordinary care may depend on the relationship between the parties or on whether the alleged tortfeasor assumed a special role in regard to the injured party. *See id.* (concluding that Wells Fargo Bank's duty of ordinary care under the circumstances did not include an affirmative obligation to review a trust document to ensure that it would be effective in reducing estate taxes); *see also id.,* ¶ 42 (concluding that because Wells Fargo undertook the role of giving financial advice to its client, its duty of ordinary care under the circumstances required it to avoid providing false information to her). When a party is alleged to have a fiduciary duty to another individual, we examine what is encompassed within ordinary care under a different lens because of that claimed fiduciary relationship.[16] *See Beloit Liqui-*

---

[16] Hoida cites *First National Bank v. Wernhart,* 204 Wis. 2d 361, 555 N.W.2d 819 (Ct. App. 1996), in support of its argument. In *Wernhart,* the court of appeals concluded that a lender had a fiduciary relationship to a borrower because it had consented to disburse the loan proceeds and personal funds of the borrower, without further participation by the borrower. *Id.* at 370. The court held that the bank, therefore, was acting as an agent of the borrower. *Id.* The court concluded that the lender owed a fiduciary duty to the borrower to assure compliance with the construction contract before disbursing funds. *Id.* Because the bank made no attempt to perform this duty, the court affirmed the circuit court's conclusion that the bank had breached its duty. *Id.* at 370–71.

*Wernhart* is readily distinguishable because the bank's duty of care in disbursing those loan proceeds was determined by the bank's obligation as a fiduciary of the borrower. Hoida claims no fiduciary relationship between itself and either M&I or Mc-

*dating Trust v. Grade,* 2004 WI 39, ¶ 2, 270 Wis. 2d 356, 677 N.W.2d 298 (concluding that a corporate officer's or director's duty of ordinary care under the circumstances to corporate creditors was not that of a fiduciary unless the corporation was insolvent and no longer a going concern). Stated otherwise, the duty of ordinary care under the circumstances is determined by what would be reasonable given the facts and circumstances of the particular claim at hand.

¶ 33. This limitation on what is required by the duty of ordinary care is not a new concept. It is a well-established consideration in the analysis of claims of intentional misrepresentation based on a failure to disclose. For example, the duty of ordinary care in regard to being required to speak is limited by the circumstances surrounding the transaction. *Kaloti Enters., Inc. v. Kellogg Sales Co.,* 2005 WI 111, ¶¶ 16–19, 283 Wis. 2d 555, 699 N.W.2d 205; *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 46, 288 N.W.2d. 95 (1980). No misrepresentation occurs through nondisclosure unless there is a duty to disclose. *Kaloti,* 283 Wis. 2d 555, ¶ 13; *Ollerman,* 94 Wis. 2d at 42.

¶ 34. Hoida's claims against M&I and McDonald Title present no special relationship, such as a fiduciary relationship, nor did either defendant assume a special role with regard to Hoida. Accordingly, we examine what a reasonable lender and its agent in the position of M&I and McDonald Title would be obligated to do in similar circumstances.

---

Donald Title. Additionally, M&I had the approval of the borrower, in writing, and it relied on that approval, only to discover later that the "approval" was part of a bank fraud scam.

¶ 35. In previous cases, we have examined business contracts and agreements to help determine what is included within the duty of ordinary care, where the alleged negligence arose out of a business relationship. *Kaloti,* 283 Wis. 2d 555, ¶¶ 6–9; *Baumeister,* 277 Wis. 2d 21, ¶¶ 21–24. *Baumeister* provides the foundation for our analysis here.

¶ 36. *Baumeister* involved the claims of two workmen who were injured during the construction of a church when the trusses that would support the church roof were being installed and the structure collapsed. *Baumeister,* 277 Wis. 2d 21, ¶ 6. They sued the architect, among others, claiming that he was negligent in providing instructions and in supervising the placing of temporary bracing that was to support the trusses during installation. *Id.,* ¶ 8. The workmen claimed that their injuries were foreseeable, if the temporary bracing was not properly placed and therefore the architect breached his duty of ordinary care. *Id.,* ¶ 13.

¶ 37. We concluded that the architect did not breach the duty of ordinary care exercised by an architect in similar circumstances. *Id.,* ¶ 18. In so concluding, we established that an architect's duty of ordinary care required a review of the architect's contract with the church. We did so because the terms of the architect's contract assisted us in determining what would be reasonable for an architect to foresee under the circumstances. The contract in *Baumeister* stated that the architect was "relieved of liability with regards to 'construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work.' " *Id.,* ¶ 21 (quoting the architect's contract with the church). We also considered the uncontroverted expert testimony of another architect whose opinion was that an architect "is not

responsible for, nor does he control, the methodology and techniques chosen by the contractor" to construct a building. *Id.* (quoting from architect Lee Madden's affidavit).

¶ 38. Here, the business context in which M&I lent construction funds was one in which each party had its own respective contractual relationship to another in a construction project. For example, M&I's contract was with Villager, who was the owner of the project and the borrower of the funds. According to their contract, M&I was not to release any funds without the owner's approval. It complied with that obligation by having McDonald Title collect a completed Application and Certification for Payment form that included Villager's signature for each draw on the loan proceeds. Although not required by its contract with Villager, M&I also had McDonald Title obtain the signature of the architect and an itemization of the general contractor before funds were released. Furthermore, M&I's contract with Villager specifically provided that M&I had no duty to secure lien waivers or to oversee construction. These contractually assumed obligations and agreed upon limitations for M&I shaped its duty of ordinary care in disbursing the proceeds of the construction loan because they set out what the parties agreed was reasonable under the circumstances.

██

¶ 39. McDonald Title's contract was with M&I. It was obligated to perform only those tasks that M&I requested, just as if it were an employee of M&I rather than an independent agent. M&I required completed Application and Certification for Payment forms for all disbursements, and McDonald Title secured those forms. It acted solely at M&I's direction. And while it is true that an agent can be individually liable if he "does

an act that would be a tort if he were not then acting as an agent," *Ramsden v. Farm Credit Services of North Central Wisconsin ACA,* 223 Wis. 2d 704, 715, 590 N.W.2d 1 (Ct. App. 1998), the principles of *Ramsden* do not enlarge an agent's duty of ordinary care beyond the principal's duty of ordinary care when the agent is acting solely as M&I, itself, could lawfully have acted. Here, Hoida seeks to ascribe liability to McDonald Title for not undertaking the same tasks as it alleges M&I should have undertaken. And, as we have explained, M&I's duty of ordinary care under the circumstances did not include the obligation to undertake the tasks Hoida seeks to impose on M&I. Furthermore, Hoida cites no Wisconsin case that would create the obligations for an agent that it ascribes to McDonald Title.[17]

¶ 40. Neither M&I nor McDonald Title reasonably could have foreseen that the general contractor and the owner would act together to forge the architect's signature on Application and Certification for Payment forms and to convert the loan proceeds for the project to their own use. Nor could they reasonably have foreseen that Hoida would produce such a mass of materials for the project without enforcing its contract with Packard to be paid within 15 days of delivery. To the contrary, two other subcontractors who were not timely paid contacted M&I, and McDonald Title paid them.

---

[17] We note a tentative draft for a proposed change to Restatement (Third) of Agency would provide that "An agent's breach of a duty owed to the principal is not an independent basis for an agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party." Restatement (Third) of Agency § 7.02 (Tentative Draft No. 5, 2004).

¶ 41. However, even assuming, arguendo, that McDonald Title was negligent in its distribution of the loan proceeds, we conclude that Hoida's claim against McDonald Title was precluded by judicial public policy. The application of judicial public policy factors to preclude recovery for negligence has a long history in Wisconsin. *See Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957). In *Colla,* we articulated the six public policy factors that Wisconsin courts use today to limit liability in negligence claims: (1) "the injury is too remote from the negligence"; (2) the recovery is " 'wholly out of proportion to the culpability of the negligent tort-feasor' "; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery "would place too unreasonable a burden" on the negligent tort-feasor; (5) recovery would be "too likely to open the way to fraudulent claims"; and (6) recovery would enter into " 'a field that has no sensible or just stopping point.' " *Id.* (citations omitted); *see also Fandrey,* 272 Wis. 2d 46, ¶¶ 30–35. If any one of the six factors applies, we may preclude liability. *Id.*

¶ 42. While there are occasions when we determine that judicial public policy factors should not be applied in advance of a full trial, *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 654, 517 N.W.2d 432 (1994), when the public policy is well presented by the pleadings and the materials accompanying a summary judgment motion, we may decide whether any of them should be applied, *Sawyer,* 227 Wis. 2d at 141.

¶ 43. Here, we conclude that permitting recovery would place too unreasonable a burden on McDonald Title, who acted solely at the direction of M&I. *Fandrey,* 272 Wis. 2d 46, ¶ 15 n.12. The burden that Hoida asks

that we place on McDonald Title when it is acting as a disbursing agent for a construction loan is to require it to: (1) identify all subcontractors and all materialmen who provide either services or goods for the construction project at any time during the course of construction; (2) for every disbursement, assess the progress of the construction and determine whether enough construction has been completed to warrant the amount of money that is being requested for that draw on the loan proceeds; and (3) before each disbursement, to collect lien waivers from all subcontractors and materialmen who provided goods or services to the construction project. Subcontractors and materialmen change as a construction project progresses. For example, a concrete subcontractor may pour the foundation and have concluded his work on the job, while a painter may work only on the inside of a building after it is largely completed. Supplies that become incorporated into a building are purchased by both general contractors and subcontractors. Tracking who purchased what and when would be a never-ending task, if we were to require McDonald Title to perform it. Additionally, we find nothing in the record that would permit us to conclude that McDonald Title has any special expertise in evaluating whether the progress in the construction of a building is equivalent to the dollar amount of any given draw request Accordingly, we conclude that Hoida's claim against McDonald Title is precluded by the fourth judicial public policy factor.[18]

¶ 44. Accordingly, we conclude that M&I and McDonald Title's duty of ordinary care under the circumstances with regard to Hoida did not require either of

---

[18] We do not analyze the other five factors, as the preclusion by one public factor is sufficient to grant summary judgment. *Fandrey,* 272 Wis. 2d 46, ¶ 34.

them to identify Hoida as a subcontractor on the project, to verify that progress on the project was sufficient to justify the release of the amount of funds that the general contractor and the owner requested, or to secure lien waivers from Hoida.

¶ 45. We further conclude that M&I exercised ordinary care under the circumstances this case presents when it retained McDonald Title to act as its disbursing agent and instructed it to secure completed Application and Certification for Payment forms for all disbursements. These forms contained the signature of Villager, who was the owner/borrower in regard to the project, the signature of the architect and the signature of the general contractor.

¶ 46. Once what is required by the duty of ordinary care under the circumstances is established, the second element of actionable negligence, whether a breach of that duty has occurred, can be ascertained. Hoida's claim of a breach is based entirely on the theory that the defendants' duty of ordinary care under the circumstances required them to undertake certain tasks that we have concluded ordinary care under the circumstances did not require. It then follows that no breach occurred and therefore the defendants were not negligent, as a matter of law.[19] In the future, when attempting to plead lender liability based on negligently‐

---

[19] We also note that because of the theft of the loan proceeds, there is a significant causation issue here. We reviewed the cause doctrine's evolution in Wisconsin in *Fandrey*. We identified the two aspects of cause, cause-in-fact and legal cause. *Fandrey*, 272 Wis. 2d 46, ¶ 14. Cause-in-fact has been described as follows: "[a] defendant's negligence is 'a cause' of a plaintiff's injury or damage if it was a substantial factor in

failing to undertake certain tasks, a plaintiff must allege why the duty of ordinary care of the lender or disbursing agent includes the obligation to affirmatively undertake the tasks that plaintiff claims the lender or disbursing agent reasonably failed to perform under the circumstances.

¶ 47. Normally, we would conclude our discussion at this point. However, it may be helpful to those who suffer losses arising from similar circumstances in the future to point out that the legislature has made a policy choice in regard to the relative priority of a subcontractor and a lender when funds are insufficient to cover both of their losses. As the court of appeals said:

> Under Wis. Stat. ch. 779, the legislature made a policy choice to provide protection to subcontractors and material suppliers on construction projects. It also elected, under Wis. Stat. §§ 779.01(4) and 706.11, to limit that protection in certain situations by providing priority status to lenders. Establishing for Hoida a new claim against M&I and McDonald would contravene the public policy choices of the legislature. "[T]he judiciary is limited to applying the policy the legislature

producing the injury or damage." *Alvarado v. Sersch,* 2003 WI 55, ¶ 34 n.2, 262 Wis. 2d 74, 662 N.W.2d 350. A finding of causation must have a reasonable basis in the record; it cannot be based on conjecture. *Merco Distrib. Corp. v. Commercial Police Alarm Co.,* 84 Wis. 2d 455, 458–60, 267 N.W.2d 652 (1978). Cause-in-fact has also been described as requiring an unbroken sequence of events connecting the negligent act and the injury. *Cefalu v. Cont'l W. Ins. Co.,* 2005 WI App 187, ¶ 2, 285 Wis. 2d 766, 703 N.W.2d 743.

Here, M&I and McDonald Title contend that Hoida's loss was caused by the collusion of the owner and the general contractor to steal the project's construction funds, not by any alleged negligence on the defendants' part.

has chosen to enact, and may not impose its own policy choices."

*Hoida,* 276 Wis. 2d 705, ¶ 23 (citation omitted).

¶ 48. We agree with the court of appeals that if this court were to develop a new lender liability claim by imposing affirmative obligations on a lender that it has not undertaken by contract or voluntarily assumed, the result would be to give subcontractors and material suppliers payment priority over construction lenders when a third party acts in a way that could cause loss for both. However, the legislature has enacted statutes that evince the public policy of Wisconsin to pay construction lenders first. Wis. Stat. § 779.01(4) and Wis. Stat. § 706.11. We cannot establish a common law claim that would contravene that legislative choice. If a new claim is to be established for those in Hoida's position, it is for the legislature to do so, not this court.

¶ 49. As we explained above, Hoida has not shown there are any material facts in dispute, or any inferences favorable to it from undisputed facts, that would entitle it to a trial. Instead, Hoida claims support for its position from *Kornitz v. Earling & Hiller, Inc.,* 49 Wis. 2d 97, 181 N.W.2d 403 (1970), which allowed a purchaser of an apartment building a trial to resolve its misrepresentation and negligence claims against a mortgage lender. It also cites *Klein-Dickert Oshkosh, Inc. v. Frontier Mortgage Corp.,* 93 Wis. 2d 660, 287 N.W.2d 742 (1980), which supported a prior court's finding that a construction project lender had guaranteed payment to a swimming pool dome subcontractor. Neither case persuades us.

¶ 50. *Kornitz* concluded that more facts were necessary before the court could fully consider the issues. It involved a misrepresentation claim, the distinct legal

elements of which weighed significantly in the court's conclusion that the plaintiff had a viable legal claim that warranted a full trial. *Kornitz,* 49 Wis. 2d at 103. As we explained in footnote 11, *supra,* Hoida did not plead a misrepresentation claim. In *Klein-Dickert,* there was privity of contract between the lender and the subcontractor because the subcontractor explained that it would not proceed with construction unless the lender guaranteed payment of its bid, and the lender agreed to that request. *Klein-Dickert,* 93 Wis. 2d at 669. The decision in *Klein-Dickert* turned on a contractual obligation. Here, Hoida had no privity of contract or third-party beneficiary status.[20]

---

[20] Hoida cites no Wisconsin case that imposes an affirmative obligation to undertake the tasks it seeks to impose on M&I and McDonald Title simply because M&I was the construction lender and McDonald Title its disbursing agent. Instead, it cites the following out-of-state cases. We conclude that none are persuasive for the position Hoida asserts.

In *Southern Life Insurance Co. v. Pollard Appliance Co.,* 150 So. 2d 416 (Miss. 1963), the court imposed liability on a lender who did not shoulder its statutory obligation under Mississippi law. *Id.* at 418. In *Cook v. Citizens Savings & Loan Ass'n,* 346 So. 2d 370 (Miss. 1977), a contractor gave notice to the lender that construction had been completed and it requested payment of the contract price of $8,800. The lender issued payment jointly to Cook and the owner for $5,000. *Id.* at 371. The lender then issued payment solely to the owner for the balance of the loan, without paying Cook what was due on his contract. *Id.* Although not specifically citing the Mississippi statute as the court did in *Southern Life Insurance,* the court did cite *Southern Life Insurance* for concluding the lender failed in its duty when disbursing the loan proceeds. *Id.* at 372. Mississippi statutes control both *Southern Life Insurance* and *Cook;* however, Wisconsin has no parallel statutory provision.

## III. CONCLUSION

¶ 51. We conclude that Hoida has not stated a third-party beneficiary claim and that it has not provided facts to controvert M&I's prima facie showing that it did not breach the duty of ordinary care under the circumstances. We also conclude that the negligence claim Hoida seeks to establish against M&I is barred by the legislative determination of priority as between a

---

In *Speights v. Arkansas Savings & Loan Ass'n,* 393 S.W.2d 228 (Ark. 1965), the lender and the borrower had a written agreement on how the loan proceeds were to be disbursed. The lender did not follow that agreement, resulting in the general contractor abandoning the job without paying the subcontractors and material suppliers to the damage of the borrower. *Id.* at 230. The court held the lender was liable because it did not follow its agreement with the borrower. *Id.* at 230–31. Here, the lender did not contravene any agreement with the borrower; the borrower stole the construction funds that were to go to Hoida. *Falls Lumber Co. v. Heman,* 181 N.E.2d 713 (Ohio Ct. App. 1961) is similar to *Speights* in that liability for the lender followed from the lender's breach of its contract with the borrower, *id.,* 181 N.E.2d at 715–16, and it is similar to *Southern Life Insurance,* in that Ohio has a statute that the lender did not follow, *id.,* 181 N.E.2d at 716.

In *Jordan v. Atlanta Neighborhood Housing Services, Inc.,* 320 S.E.2d 215 (Ga. Ct. App. 1984), the lender undertook inspection of the construction for the borrower's benefit as well as for its own benefit, which resulted in liability for the lender when it did so negligently. *Id.* at 216–17. Here, neither M&I nor McDonald Title assumed the role of property inspector for the benefit of anyone other than M&I. And finally, in *Connor v. Great Western Savings & Loan Ass'n,* 69 Cal. 2d 850 (Cal. 1968), the lender wore two hats: one as a developer of a subdivision under construction and the second as the financing entity for it. *Id.* at 858. Liability followed that broad relationship to the construction. *Id.* at 864. M&I did not assume any role except that of the lender; it wore only one hat.

lender and a subcontractor set out in Wis. Stat. § 779.01(4) and Wis. Stat. § 706.11. And finally, while we do not conclude that Hoida has overcome McDonald Title's prima facie showing that it did not breach the duty of ordinary care under the circumstances, if we were to do so, Hoida's negligence claim would be precluded by judicial public policy. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 52. SHIRLEY S. ABRAHAMSON, C.J., took no part.

¶ 53. ANN WALSH BRADLEY, J. (*dissenting*).

I

¶ 54. I begin with a simple premise: our job is to clarify, not to confuse the law.

¶ 55. Thus, I am perplexed by the majority's approach here. It is as though the majority initially wrote the opinion limiting liability based on duty. *See* majority op., ¶¶ 20–40. Then, recognizing that such an approach is inconsistent with Wisconsin law, it reworded some things and tagged on an ending that limits liability based on public policy, without deleting the initial duty analysis. *See id.,* ¶¶ 41–43.

¶ 56. Today's majority inexplicably seems to cloud what this court recently clarified. In *Gritzner v. Michael R.,* 2000 WI 68, ¶ 24 n.4, 235 Wis. 2d 781, 611 N.W.2d 906, Justice Wilcox, writing on behalf of the court, carefully analyzed the prior confusion and explained the rudimentary principle that limiting liability based on duty is "incorrect under Wisconsin law."

*[S]ome Wisconsin cases have examined liability limitations in terms of duty. See Estate of Becker v. Olson, 218*

319

Wis. 2d 12, 579 N.W.2d 810 (Ct. App. 1998); *Zelco v. Integrity Mut. Ins. Co.,* 190 Wis. 2d 74, 527 N.W.2d 357 (Ct. App. 1994); *Erickson v. Prudential Property and Cas. Ins. Co.,* 166 Wis. 2d 82, 479 N.W.2d 552 (Ct. App. 1991). *This formulation of the analysis is incorrect under Wisconsin law.* In Wisconsin, everyone has a duty to act with reasonable care. Liability for breach of that duty is limited on public policy grounds.

*Gritzner,* 235 Wis. 2d 781, ¶ 24 n.4 (emphasis added).

¶ 57. Three years after *Gritzner,* the court reaffirmed this passage, noting that the *Gritzner* court had "aptly" clarified the previous confusion. *Alvarado v. Sersch,* 2003 WI 55, ¶ 16 & n.2, 262 Wis. 2d 74, 662 N.W.2d 350. Quoting *Gritzner,* we again stated that limiting liability based on duty *"is incorrect under Wisconsin law." Id.* (emphasis added).

¶ 58. Nevertheless, the majority seems to ignore this rudimentary principle. In analyzing Hoida's claim, it spends approximately twenty lengthy paragraphs of discussion to determine, in essence, that M&I and McDonald Title's liability is limited because they did not owe certain duties to Hoida. *See* majority op., ¶¶ 20–40. Substituting the word "obligation" for the word "duty," the majority concludes that neither M&I nor McDonald Title had "the obligation to undertake the tasks Hoida seeks to impose on M&I. Furthermore, Hoida cites no Wisconsin case that would create the obligations for an agent that it ascribes to McDonald Title." *Id.,* ¶ 39; *see also id.,* ¶ 44.

¶ 59. This rudimentary principle of Wisconsin negligence jurisprudence has been recognized by the court over and over again. In Wisconsin we have rejected the no duty-no liability approach and instead limit liability based on the application of public policy factors. *See, e.g., Stehlik v. Rhoads,* 2002 WI 73, ¶ 52,

320

253 Wis. 2d 477, 645 N.W.2d 889 ("*[I]n Wisconsin, common law limitations on liability are determined not by reference to the absence of a duty, but as a matter of public policy.*") (emphasis added); *Rockweit v. Senecal,* 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995) (Justice Wilcox writing for the majority) ("*[T]he determination to deny liability is essentially one of public policy rather than of duty . . . .*") (emphasis added); *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 644, 517 N.W.2d 432 (1994) ("*[T]he doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability.*") (emphasis added); *see also Alvarado,* 262 Wis. 2d 74, ¶ 16; *Smaxwell v. Bayard,* 2004 WI 101, ¶ 39, 274 Wis. 2d 278, 682 N.W.2d 923; *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.,* 2002 WI 80, ¶¶ 32, 45, 254 Wis. 2d 77, 646 N.W.2d 777.

¶ 60. With the majority's primary focus on duty, is it sub silentio overruling our pronouncements in *Stehlik* and *Rockweit?* Is it retreating from *Bowen, Smaxwell,* and *Physicians Plus?* Is the majority saying that *Gritzner* was wrong when it said that to limit liability based on duty is "incorrect"?

¶ 61. I doubt it, but it is hard to know for sure.

¶ 62. On the one hand, the majority cites *Gritzner* with approval, but on the other hand it states that courts can limit liability in examining the question of "*whether a duty exists* and the scope of such a duty." Majority op., ¶ 23 n.12 (emphasis added). In one paragraph it cites favorably to *Smaxwell, id.,* ¶ 24, but then in the next paragraph it states that "even if an appellate court can directly consider the judicial public policy factors to preclude liability," it still must first consider whether there is a duty. *Id.,* ¶ 25. It cites *Alvarado* for this latter premise, *id.,* but *Alvarado* says no such thing.

¶ 63. What are courts, lawyers, and litigants to think? Does Wisconsin limit liability for negligence based on public policy, or based on duty?

¶ 64. I thought that this question was answered decades ago when Wisconsin rejected the no duty-no liability approach of the majority in *Palsgraf v. Long Island Railroad Co.,* 162 N.E. 99 (1928). In *A. E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974), this court set forth "[t]he history of this court's rejection of the no duty-no liability concept of the majority in *Palsgraf. . . .*" Likewise, in *Smaxwell,* we explained that "Wisconsin has rejected the 'no duty' approach of the majority opinion in *Palsgraf . . . .* As we have previously explained: 'In this state all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others. . . .'" *Smaxwell,* 274 Wis. 2d 278, ¶ 32 (citations omitted).

¶ 65. What is problematic about the majority's approach, however, is not only that it limits liability based on duty. Rather, what is particularly problematic here is the confusion that the majority engenders with respect to the development of our law. It purports to undertake an authoritative outline of the development of Wisconsin's approach to negligence law that is at odds with our legal history. *See* majority op., ¶¶ 23–29. After reinterpreting our history, it ultimately employs a liability analysis that, in reality, focuses on duty. Thus, the majority opinion in both its re-interpretation of our legal history and in its analysis contradicts Wisconsin's historical rejection of the no duty-no liability approach of the *Palsgraf* majority.[1]

---

[1] In her dissenting opinion in *Alvarado v. Sersch,* 2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350, then-Justice Diane Sykes discussed the genesis of Wisconsin's approach to negligence. After observing that "in Wisconsin, common law limitations on

¶ 66. In focusing primarily on duty, the majority relies heavily on *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). Citing that case as authority, it says that in *Klassa* "we reviewed the established concept that in order to find negligence, a court must first decide whether the defendant owed a duty to the plaintiff." Majority op., ¶ 28. But today's majority more than "reviews" this supposedly established concept. The majority seems to revive it.

¶ 67. *Klassa* is recognized as establishing exactly the opposite of the no duty-no liability approach that the majority now appears to revive. The court in *A. E. Investment,* 62 Wis. 2d at 483–86, recognized that it was in *Klassa* that Wisconsin expressly adopted the position

---

liability are determined not by reference to the absence of a duty, but as a matter of public policy," *id.,* ¶ 36 (citation omitted), she proceeded to examine the dissenting opinion in *Palsgraf v. Long Island Railroad Co.,* 162 N.E. 99 (1928), written by Judge Andrews. Justice Sykes explained:

> What we in Wisconsin refer to as public policy limitations on liability, Judge Andrews catalogued as factors that govern the court's determination of legal or "proximate cause."
>
> Judge Andrews said that the duty of ordinary care is owed to all who might be injured as a consequence of an unreasonably risky (i.e., negligent) act or omission, but he also said "there is one limitation. The damages must be so connected with the negligence that the latter may be said to be the proximate cause of the former." *Palsgraf,* 162 N.E. at 103. The negligence, he said, might be "[a] cause, but not the proximate cause. What we [] mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics." *Id.* This judicial line-drawing relies upon "common sense" and "fair judgment," and "endeavor[s] to make a rule in each case that will be practical and in keeping with the general understanding of mankind." *Id.* at 104.

*Alvarado,* 262 Wis. 2d 74, ¶¶ 42–43 (Sykes, J., dissenting).

of the dissent in *Palsgraf,* rejecting the no duty-no liability approach of the *Palsgraf* majority.

¶ 68. Likewise, the court in *Bowen* proclaimed *Klassa* the death knell of the duty analysis that the majority here seemingly resurrects:

> The *Klassa* court attempted to harmonize *Waube* [*v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935)]'s zone of danger rule with the Wisconsin approach to the law of negligence by renouncing *Palsgraf*'s concept of duty. Wisconsin law considers conduct to be negligent if it involves a foreseeable risk of harm to anyone. In Wisconsin, the doctrine of public policy, not the doctrine of duty, limits the scope of the defendant's liability. . . . *Klassa*'s public policy formulation is a more realistic description of how Wisconsin courts decide whether to impose liability upon a negligent tortfeasor than the foreseeability formulation in *Palsgraf* and *Waube.*

*Bowen,* 183 Wis. 2d at 644–645 (footnotes omitted).

¶ 69. In any event, those cases and other cases of even more recent vintage (cited above), dispel the interpretative cast over *Klassa* that today's majority appears to advance. Under those cases, it is fundamental that courts in Wisconsin do not "first decide whether the defendant owed a duty to the plaintiff" as the majority suggests. *See* majority op., ¶ 28. Rather, those cases establish that in Wisconsin everyone has a duty to exercise ordinary care under the circumstances.[2]

---

[2] *Hatleberg v. Norwest Bank Wisconsin,* 2005 WI 109, ¶ 17, 283 Wis. 2d 234, 700 N.W.2d 15; *Smaxwell v. Bayard,* 2004 WI 101, ¶ 32, 274 Wis. 2d 278, 682 N.W.2d 923; *Alvarado,* 262 Wis. 2d 74, ¶¶ 13–14; *Stephenson v. Universal Metrics, Inc.,* 2002 WI 30, ¶ 16, 251 Wis. 2d 171, 641 N.W.2d 158; *Gritzner v. Michael R.,* 2000 WI 68, ¶ 20, 235 Wis. 2d 781, 611 N.W.2d 906; *Rockweit v. Senecal,* 197 Wis. 2d 409, 419–420, 541 N.W.2d 742 (1995).

¶ 70. Wisconsin follows the approach of the *Palsgraf* dissent. In this approach the duty and breach elements are integrated into a "more general inquiry which asks simply whether the defendant's conduct was 'negligent,' then separately address[es] the issue of causation and damages." Vincent R. Johnson & Alan Gunn, *Studies in American Tort Law* 217 (1994).

¶ 71. For example, in an ordinary negligence case, the jury is not asked separate questions of whether there exists a duty and whether that duty was breached. Rather, those concepts are incorporated into our negligence inquiry. Thus, the jury is asked the question of whether a party was negligent.[3]

¶ 72. Curiously, the majority criticizes this dissent for relying heavily on the *Palsgraf* dissent, which is the law of Wisconsin. *See* majority op., ¶ 23 n.12. How odd to be criticized for relying on what the law *is* rather than what it is *not*.

¶ 73. I have no quarrel with the four-element test for ordinary negligence as stated by the majority and

---

[3] Negligence is defined in Wisconsin as follows:

> A person is negligent when [he/she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

Wis. JI Civil—1005 ("NEGLIGENCE: DEFINED"); *accord Alvarado,* 262 Wis. 2d 74, ¶ 34 & n.1; *Gritzner,* 235 Wis. 2d 781, ¶ 22; *Morden v. Continental AG,* 2000 WI 51, ¶ 53, 235 Wis. 2d 325, 611 N.W.2d 659; *Rockweit,* 197 Wis. 2d at 424 & n.7; *Schuster v. St. Vincent Hosp.,* 45 Wis. 2d 135, 141, 172 N.W.2d 421 (1969); *Osborne v. Montgomery,* 203 Wis. 223, 242–43, 234 N.W. 372 (1931).

numerous Wisconsin cases. *See id.,* ¶ 23. In Wisconsin, however, the *existence* of a duty is always present in an ordinary negligence determination.[4] This is because we are all held to a duty of exercising ordinary care under the circumstances.

¶ 74. The majority compounds the confusion and seems to corrupt the four-element formulation of the test by breaking the duty element into two sub-parts: "(1) *the existence of a duty of ordinary care;* and, (2) an assessment of what ordinary care requires under the circumstances." *Id.,* ¶ 27 (emphasis added). The majority cites *Hatleberg v. Norwest Bank Wisconsin,* 2005 WI 109, ¶¶ 17–18, 283 Wis. 2d 234, 700 N.W.2d 15, for this two-pronged formulation of duty, *see* majority op., ¶ 27, but the cited portions of *Hatleberg* do not support this two-pronged approach. Why today's majority perceives a need to divide the duty element into two further elements is unclear.

¶ 75. Also confusing is the majority's repeated characterization of Hoida's cause of action as a "new" type of claim. *See* majority op., ¶ 26 (referring to "this new claim that Hoida seeks to develop"); ¶ 48 ("if this court were to develop a new lender liability claim . . . ."). What new type of claim is the majority talking about? There is no dispute that Hoida pled a claim for ordinary negligence. Perhaps today's majority opinion applies only to such a "lender liability claim"? Majority op., ¶ 48. I am uncertain. The majority's characterization of Hoida's ordinary negligence as some "new" type of claim seems to be without support.

---

[4] This case is pled as and presents a claim of ordinary negligence. No special relationship is alleged that would impose a heightened duty and take this case out of the normal negligence analysis. *See A. E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 486, 214 N.W.2d 764 (1974).

¶ 76. In addition to characterizing Hoida's claim as a "new" type of claim, the majority also unexpectedly creates a unique pleading requirement for this new claim. Contrary to our general notice pleading requirements, the majority imposes a new mandate for particularity: "In the future, when attempting to plead lender liability based on negligently failing to undertake certain tasks, a plaintiff must allege why the duty of ordinary care of the lender or disbursing agent includes the obligation to affirmatively undertake the tasks that plaintiff claims the lender or disbursing agent reasonably failed to perform under the circumstances." *Id., ¶* 46.

¶ 77. I am not sure what will be deemed sufficient under the majority's new mandate. Maybe it means here that the plaintiffs should have pled that: "the duty to get lien waivers is part of the duty to exercise ordinary care under the circumstances because the evidence reveals that it is the standard in the industry to get such lien waivers." Even so, that is exactly what the evidence here seems to reveal.[5] Yet, the majority apparently concludes as a matter of law that the standard in the industry is not part of the duty to exercise ordinary care. Therefore, such a pleading would have been insufficient. It seems to me that this new requirement is nothing more than a trap for the unwary.

¶ 78. I return to the simple premise that our job is to clarify, not to confuse the law. As we explained in *Gritzner,* the "no duty" approach to limiting liability used by the majority today is plainly "incorrect under Wisconsin law." *Gritzner,* 235 Wis. 2d 781, ¶ 24 n.4.

¶ 79. What reason could today's majority have for seeming to cloud what this court has repeatedly clari-

---

[5] See Part II of this dissent below.

fied? Why does the majority assert a reinterpretive cast over Wisconsin's approach to negligence law that is at odds with our legal history?

¶ 80. Perhaps the answer lies in the confusion observed in *Mohr v. St. Paul Fire & Marine Insurance Co.*, 2004 WI App 5, ¶ 40, 269 Wis. 2d 302, 674 N.W.2d 576 (Ct. App. 2003), *review denied,* 2004 WI 50, 271 Wis. 2d 109, 679 N.W.2d 544: "Although courts have sometimes used the language that a defendant had 'no duty' to the injured person, they are in reality making a decision that there should be no liability as a matter of public policy."

¶ 81. I ultimately conclude that it cannot be discerned what today's majority opinion stands for in Wisconsin negligence law. I suspect that other readers of the majority opinion will reach the same conclusion.

## II

¶ 82. In order to determine whether liability for negligence should be limited, Wisconsin courts apply six public policy considerations, asking whether:

> (1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; [or] (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Gritzner,* 235 Wis. 2d 781, ¶ 27.

¶ 83. "In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability."

*Alvarado,* 262 Wis. 2d 74, ¶ 18. "Only in those cases where the facts are simple to ascertain and the public policy questions have been fully presented may a court review public policy and preclude liability before trial." *Id.; see also Gritzner,* 235 Wis. 2d 781, ¶ 26; *Sawyer v. Midelfort,* 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999); *Bowen,* 183 Wis. 2d at 655; *Schuster v. Altenberg,* 144 Wis. 2d 223, 241, 424 N.W.2d 159 (1988); *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 542, 247 N.W.2d 132 (1976).

¶ 84. Here, the facts are not so simple and the conclusions regarding negligence are mixed. The majority ignores, for example, that the failure to obtain lien waivers was a violation of M&I's own policies. Similarly, it downplays testimony that lien waivers are customarily obtained before the funding of subsequent draw requests. *See* majority op., ¶ 20.

¶ 85. In stark contrast to the majority's determination that M&I and McDonald Title were not negligent as a matter of law, the court of appeals in this case concluded the opposite. It concluded that M&I and McDonald were negligent as a matter of law:

> Here, the act (or failure to act) was the failure to procure lien waivers. M&I and McDonald witnesses stated that obtaining lien waivers was the industry standard, and that this was the usual practice of M&I and McDonald. Domaszek averred that it was inconsistent with M&I's policy to pay draws when lien waivers had not been obtained on previous draws. Robert McDonald averred that in Portage County, lien waivers are customarily obtained by disbursing agents before the funding of the next draw request. McDonald also averred that the guidelines and procedures of the insurance manual governing the title insurance issued for the project stated that "we should make every effort to obtain [lien] waivers *in full* wherever possible." It was foreseeable that the failure to obtain lien waivers could harm subcontractors, including Hoida.

*Hoida, Inc. v. M&I Midstate Bank,* 2004 WI App 191, ¶ 14, 276 Wis. 2d 705, 688 N.W.2d 691.

¶ 86. One would think that the court of appeals' conclusion that M&I and McDonald were negligent as a matter of law should at least cause the majority to pause. When the majority determines to the contrary that M&I and McDonald cannot be negligent as a matter of law, what the majority should be pausing to ask is whether a reasonable jury could conclude that M&I or McDonald Title "[did] something (or fail[ed] to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage." Wis. JI Civil—1005 ("NEGLIGENCE: DEFINED"). Asking the proper question, I determine that, at a minimum, a question of fact remains as to whether M&I and McDonald Title were negligent.

¶ 87. Nevertheless, having concluded that the defendants are not negligent as a matter of law, the majority applies one of the six public policy considerations, essentially as an afterthought to its liability-limiting "duty" analysis. By failing to recognize the rudimentary principle that liability for negligence is limited by public policy considerations, not duty, the majority front loads its negligence analysis focusing on duty. Thus, it avoids any real discussion of those public policy considerations and of whether it is too soon to apply them.

¶ 88. The majority does not explain why it departs from the better practice of submitting the case to the jury before determining whether the six public policy considerations should preclude liability. It does not explain why this is one of the unusual cases where the facts are simple to ascertain and the public policy questions have been fully presented.

¶ 89. In applying only one of the six public policy considerations, the majority concludes that permitting recovery would place "too unreasonable a burden on McDonald Title, who acted solely at the direction of M&I." Majority op., ¶ 43.[6] The majority apparently believes that it would be unreasonable to require that McDonald Title "collect lien waivers from all subcontractors and materialmen" because "[t]racking who purchased what and when would be a never-ending task." *Id.*

¶ 90. Such a belief is unpersuasive here. As already discussed, there was evidence that both M&I's policies and industry standards required the collection of lien waivers. Thus, as the evidence stands now—particularly if, following standard summary judgment methodology, all reasonable inferences are construed in favor of Hoida —the record hardly justifies a conclusion that requiring the collection of lien waivers places too unreasonable a burden on either McDonald Title or M&I.

¶ 91. In addition, as the facts stand now, there is serious question as to whether Hoida's injury is too remote from any negligence, whether it is wholly out of proportion to the defendants' culpability, or whether in retrospect it appears too highly extraordinary that their negligence should have resulted in the harm that Hoida suffered. Likewise, nothing in the record at this stage of the proceedings conclusively suggests that allowing recovery would be likely to open the way for fraudulent claims or would enter a field that has no sensible or just stopping point.

¶ 92. As referenced above, it is worth repeating that the parties' arguments reflect significant factual

---

[6] The majority does not explain why permitting recovery would place too unreasonable a burden on M&I.

disagreements, including a key disagreement over the precise role of McDonald Title. The parties dispute whether McDonald Title was a "construction supervisor" or "disbursing agent," and what obligations flow from one role or the other. In my view, the nature of McDonald Title's role is plainly relevant to the proper application of the public policy considerations.

¶ 93. Consequently, I conclude that it is too early to apply the public policy considerations to limit liability at this stage of the proceedings. In doing so, I follow the better practice of submitting the case to the jury before determining whether the six public policy considerations should preclude liability. Here, the facts are not presently simple to ascertain. The public policy questions are not sufficiently presented for this court to preclude liability at this time.

### III

¶ 94. In sum, I cannot join the majority because it erroneously cuts off liability for potential negligence using the concept of duty rather than public policy. In doing so, it seems to cloud one of Wisconsin's most rudimentary negligence principles. Unlike today's confusing majority opinion, I apply that principle and conclude that it is too early to apply the public policy considerations to limit M&I's or McDonald Title's liability for their potential negligence. I would therefore reverse the court of appeals and remand this case to the circuit court for further proceedings. Accordingly, I respectfully dissent.

¶ 95. I am authorized to state that JUSTICE LOUIS B. BUTLER, JR. joins this opinion.